**Lansing, Michigan**

# Opinion

Chief Justice:        Justices:

Robert P. Young, Jr.   Michael F. Cavanagh
                      Marilyn Kelly
                      Stephen J. Markman
                      Diane M. Hathaway
                      Mary Beth Kelly
                      Brian K. Zahra

FILED JULY 31, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

SPECTRUM HEALTH HOSPITALS,

      Plaintiff-Appellee,

v                                No. 142874

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN and FARM
BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

      Defendants-Appellants.

---

PROGRESSIVE MARATHON
INSURANCE COMPANY,

      Plaintiff/Cross-Defendant-
      Appellant,

v                                No. 143330

RYAN DeYOUNG and NICOLE L.
DeYOUNG,

Defendants,

and

SPECTRUM HEALTH HOSPITALS and
MARY FREE BED REHABILITATION
HOSPITAL,

Intervenors/Cross-Plaintiffs-
Appellees,

and

CITIZENS INSURANCE COMPANY OF
AMERICA,

Intervenor/Cross-Defendant-
Appellee.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

We granted leave in these cases to address the question whether a person injured while driving a motor vehicle that the person had taken contrary to the express prohibition of the owner may avail himself or herself of personal protection insurance benefits (commonly known as "PIP benefits") under the no-fault act,[1] notwithstanding the fact that MCL 500.3113(a) bars a person from receiving PIP benefits for injuries suffered while using a vehicle that he or she "had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle."

---

[1] MCL 500.3101 *et seq.*

We hold that any person who takes a vehicle contrary to a provision of the Michigan Penal Code[2]—including MCL 750.413 and MCL 750.414, informally known as the "joyriding" statutes—has taken the vehicle unlawfully for purposes of MCL 500.3113(a).[3] We also hold that the use of the phrase "a person" in MCL 500.3113(a) clearly and plainly includes a family member who has taken a vehicle unlawfully, thereby precluding that person from receiving PIP benefits.

In reaching this conclusion, we consider and reject two distinct legal theories that the respective panels of the Court of Appeals applied in concluding that the PIP claimants are not excluded from receiving benefits by MCL 500.3113(a). In *Spectrum Health Hospitals v Farm Bureau Mutual Insurance Co of Michigan* (Docket No. 142874), we examine the "chain of permissive use" theory, which the Court of Appeals initially adopted in *Bronson Methodist Hospital v Forshee*.[4] This theory arises when a vehicle owner authorizes the vehicle's use by another person (the intermediate user), who in turn authorizes a third person (the end user) to use the vehicle. Applying *Bronson* in *Spectrum Health*, the Court of Appeals held that, for the purposes of MCL 500.3113(a), a vehicle owner is presumed to have allowed the end user to take the vehicle, regardless of

---

[2] MCL 750.1 *et seq*.

[3] We acknowledge that MCL 500.3113(a) may allow a user who has unlawfully taken the vehicle to receive PIP benefits if the user "reasonably believed that he or she was entitled to take and use the vehicle." However, because no real argument is presented in these cases that the claimants reasonably held these beliefs, we do not address these circumstances, only the meaning of the phrase "taken unlawfully."

[4] *Bronson Methodist Hosp v Forshee*, 198 Mich App 617; 499 NW2d 423 (1993).

3

whether the owner had expressly forbidden the end user from taking the car.[5] We conclude that *Bronson* erred by applying a theory developed in owner-liability caselaw to the context of MCL 500.3113(a) because this caselaw did not address whether the end user of a vehicle violated the Michigan Penal Code, including MCL 750.413 or MCL 750.414, by unlawfully *taking* a vehicle. Therefore, we overrule *Bronson*'s application of the "chain of permissive use" theory as inconsistent with MCL 500.3113(a). To determine whether the end user in *Spectrum Health* unlawfully took the vehicle, we consider the undisputed facts of this case: the vehicle's owner expressly told the end user that he was not allowed to drive the vehicle. Therefore, we conclude that the Court of Appeals erred by affirming the circuit court's grant of summary disposition to *Spectrum Health* because MCL 500.3113(a) precludes the claimant from receiving PIP benefits in this case.

In *Progressive Marathon Insurance Co v DeYoung* (Docket No. 143330), we examine the "family joyriding exception" to MCL 500.3113(a). This theory, first articulated in Justice LEVIN's plurality opinion in *Priesman v Meridian Mutual Insurance Co*,[6] involves the unauthorized taking of a person's motor vehicle by a family member who did not intend to steal it. Justice LEVIN opined that the Legislature did not intend that a relative's "joyride" be considered an unlawful taking under MCL 500.3113(a) because, given that most legislators are parents and grandparents, they may have

---

[5] *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, unpublished opinion per curiam of the Court of Appeals, issued February 24, 2011 (Docket No. 296976), pp 3-4.

[6] *Priesman v Meridian Mut Ins Co*, 441 Mich 60; 490 NW2d 314 (1992).

4

experienced children who used a family vehicle without permission and may have done so themselves.[7] Thus, he concluded that the Legislature did not truly intend to exclude teenagers who joyride in their relatives' automobiles. Because the family-joyriding exception has no basis in the language of MCL 500.3113(a), we disavow Justice LEVIN's plurality opinion in *Priesman* and overrule the Court of Appeals decisions applying it: *Butterworth Hospital v Farm Bureau Insurance Co*,[8] *Mester v State Farm Mutual Insurance Co*,[9] *Allen v State Farm Mutual Automobile Insurance Co*,[10] and *Roberts v Titan Insurance Co (On Reconsideration)*.[11] Cross-defendants, Progressive Marathon Insurance Company and Citizens Insurance Company of America, are entitled to summary disposition because MCL 500.3113(a) excludes the injured claimant from coverage.

Therefore, in both *Spectrum Health* (Docket No. 142874) and *Progressive* (Docket No. 143330), we reverse the judgments of the Court of Appeals and remand these cases to their respective circuit courts for further proceedings consistent with this opinion.

---

[7] *Id*. at 67-68.

[8] *Butterworth Hosp v Farm Bureau Ins Co*, 225 Mich App 244; 570 NW2d 304 (1997).

[9] *Mester v State Farm Mut Ins Co*, 235 Mich App 84; 596 NW2d 205 (1999).

[10] *Allen v State Farm Mut Auto Ins Co*, 268 Mich App 342; 708 NW2d 131 (2005).

[11] *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339, 342; 764 NW2d 304 (2009).

5

## I. BASIC FACTS AND PROCEEDINGS

### A. *SPECTRUM HEALTH*

PIP claimant Craig Smith, Jr. (Craig Jr.), was injured in a single-car accident that occurred while he was driving a vehicle owned by his father, Craig Smith, Sr. (Craig Sr.), and insured by Farm Bureau Mutual Insurance Company of Michigan. Craig Sr. had forbidden Craig Jr. to operate the vehicle because he had no valid driver's license. Craig Jr. acknowledged that he knew he was forbidden to operate the vehicle. Craig Sr. entrusted the vehicle to Craig Jr.'s girlfriend, Kathleen Chirco, to enable Craig Jr. and Kathleen to perform landscaping services. Nevertheless, Craig Sr. instructed Kathleen, in Craig Jr.'s presence, that she was not to allow Craig Jr. to drive it. That night, Craig Jr. began drinking and asked Kathleen for the keys to Craig Sr.'s vehicle. Although she initially resisted, Kathleen eventually gave him the keys, and he later crashed the vehicle into a tree. Craig Jr. pleaded no contest to operating while intoxicated causing serious injury, MCL 257.625, and was sentenced to a minimum of 2½ years in prison.

Spectrum Health Hospitals, which rendered care to Craig Jr., brought suit against Farm Bureau to recover payment for those services and subsequently moved for summary disposition. Farm Bureau opposed Spectrum Health's motion and took the position that Craig Jr. was not entitled to PIP benefits because the vehicle he was using had been taken unlawfully. The circuit court granted summary disposition in favor of Spectrum Health, ruling that Kathleen had been empowered to permit Craig Jr. to operate the vehicle. The

Court of Appeals affirmed, applying the chain-of-permissive-use theory from *Bronson* to conclude that Craig Jr. had not taken the vehicle unlawfully.[12]

This Court granted Farm Bureau's application for leave to appeal, requesting the parties to address

> whether an immediate family member who knows that he or she has been forbidden to drive a vehicle may nevertheless be a permissive user of the vehicle eligible for [PIP] benefits under MCL 500.3113(a) when, contrary to the owner's prohibition, an intermediate permissive user grants the [PIP] claimant permission to operate the accident vehicle.[13]

## B. *PROGRESSIVE*

By age 26, Ryan DeYoung had accumulated three drunk-driving convictions, which resulted in the repeated loss of his valid driver's license beginning at age 17. Ryan's wife, Nicole DeYoung, owned and insured the family's four vehicles with Progressive Marathon Insurance Company. Ryan was a named excluded driver on the Progressive policy. As a result, Nicole expressly prohibited Ryan from driving the vehicles, including the 2001 Oldsmobile Bravada that she used as her principal vehicle. On the night of September 17, 2008, Ryan came home intoxicated and without his house key. He banged on the window of their home. Nicole rose from her bed, admitted him, and, perceiving his intoxicated state, went back to bed. Ryan took the key to the Bravada out of Nicole's purse and then took the vehicle, contrary to Nicole's standing instructions and without her permission.

---

[12] *Spectrum*, unpub op at 3-4.

[13] *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 490 Mich 869 (2011).

Within 20 minutes of taking Nicole's vehicle, Ryan was badly injured in a single-car accident. He incurred bills of more than $53,000 at Spectrum Health Hospitals and another $232,000 at Mary Free Bed Rehabilitation Hospital. Progressive denied PIP benefits, arguing that Ryan had been injured while using a vehicle that he had unlawfully taken. It commenced a declaratory action against Ryan and Nicole on this basis. Spectrum Health and Mary Free Bed intervened as cross-plaintiffs to recover payment from Progressive for the outstanding bills. Spectrum Health and Mary Free Bed also filed a claim with the Michigan Assigned Claims Facility, which designated Citizens Insurance Company of America to respond to Ryan's claim. Citizens also denied coverage, and Progressive named Citizens as a cross-defendant in this lawsuit.

Progressive moved for summary disposition, contending that at the time of the accident Ryan was using a motor vehicle that he had taken unlawfully and without a reasonable belief that he was entitled to do so, which precluded him from receiving PIP benefits under MCL 500.3113(a). The circuit court granted summary disposition to both Progressive and Citizens, ruling that although the Court of Appeals decisions recognizing and applying the family-joyriding exception were binding precedent, none had extended the exception to a case in which the family member was a named excluded driver on the underlying no-fault policy. The circuit court concluded that "[t]o further extend the 'joyriding' exception so as to overturn excluded driver provisions is to increase the risk in all such policies, and may result in good drivers with uninsurable family members (due to excessive risk associated with poor driving records) becoming uninsurable themselves." The circuit court concluded that it would "not engage in such rewriting of private contracts."

8

The Court of Appeals reversed, concluding that it had no alternative but to follow the binding precedent of prior Court of Appeals decisions recognizing and applying the family-joyriding exception to the disqualification from coverage of MCL 500.3113(a).[14]

We granted Spectrum Health and Mary Free Bed's application for leave to appeal, requesting that the parties address

> (1) whether an immediate family member who knows that he or she has been forbidden to drive a vehicle, and has been named in the no-fault insurance policy applicable to the vehicle as an excluded driver, but who nevertheless operates the vehicle and sustains personal injury in an accident while doing so, comes within the so-called "family joyriding exception" to MCL 500.3113(a); and (2) if so, whether the "family joyriding exception" should be limited or overruled.[15]

## II.  STANDARD OF REVIEW

These cases involve the interpretation of MCL 500.3113(a).  Issues of statutory interpretation are questions of law that this Court reviews de novo.[16]  In examining MCL 500.3113(a), we must apply our longstanding principles of statutory interpretation:

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language.  The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used.  We may consult dictionary definitions to give words their common and ordinary meaning.

---

[14] *Progressive Marathon Ins Co v DeYoung*, unpublished opinion per curiam of the Court of Appeals, issued May 24, 2011 (Docket No. 296502), pp 4-5.

[15] *Progressive Marathon Ins Co v DeYoung*, 490 Mich 869 (2011).

[16] *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011) (citations and quotation marks omitted).

9

When given their common and ordinary meaning, "[t]he words of a statute provide 'the most reliable evidence of its intent . . . .'"[17]

A circuit court's decision on a motion for summary disposition is also reviewed de novo.[18]

## III. ANALYSIS

MCL 500.3113 excludes certain people from entitlement to PIP benefits. It states in relevant part:

A person is not entitled to be paid [PIP] benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

(a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.

Each of these cases involves a Court of Appeals decision not to apply the PIP benefits exclusion in MCL 500.3113(a) to the underlying claimant. In *Spectrum Health*, the Court of Appeals applied the chain-of-permissive-use theory articulated in *Bronson*[19] to conclude that Craig Jr. was a permissive user of the vehicle notwithstanding the fact that his father had expressly forbidden him to drive the vehicle. In *Progressive*, the Court of Appeals applied the family-joyriding exception articulated in Justice LEVIN's plurality opinion in *Priesman*[20] to conclude that MCL 500.3113(a) did not exclude the claimant

---

[17] *Id.* at 156-157 (citations omitted).

[18] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

[19] *Bronson*, 198 Mich App at 624-625.

[20] *Priesman*, 441 Mich at 60 (opinion by LEVIN, J.).

after he took his wife's vehicle contrary to her standing prohibition. Both of these theories purport to limit application of the phrase "taken unlawfully" in MCL 500.3113(a).

In determining the Legislature's intended meaning of the phrase "taken unlawfully," we must accord the phrase its plain and ordinary meaning, and we may consult dictionary definitions because the no-fault act does not define the phrase.[21] The word "unlawful" commonly means "not lawful; contrary to law; illegal,"[22] and the word "take" is commonly understood as "to get into one's hands or possession by voluntary action."[23] When the words are considered together, the plain meaning of the phrase "taken unlawfully" readily embraces a situation in which an individual gains possession of a vehicle contrary to Michigan law.

The Michigan Penal Code contains several statutes that prohibit "takings," including two that prohibit "joyriding," MCL 750.413 and MCL 750.414. MCL 750.413 states that "[a]ny person who shall, wilfully and without authority, take possession of and drive or take away . . . any motor vehicle, belonging to another, shall be guilty of a felony . . . ." Similarly, MCL 750.414 provides in pertinent part that "[a]ny person who

---

[21] *Krohn*, 490 Mich at 156.

[22] *Random House Webster's College Dictionary* (2000). Justice CAVANAGH's dissenting opinion claims "there is no indication that it is proper to resort to the Penal Code to give meaning to a specific phrase in the no-fault act." *Post* at 6. However, in this context, the term "unlawful" can only refer to the Michigan Penal Code, and Justice CAVANAGH tacitly admits this point by opining that the term "taken unlawfully" refers to "car thieves." *Post* at 8 (emphasis omitted).

[23] *Id*.

11

takes or uses without authority any motor vehicle without intent to steal the same, or who is a party to such unauthorized taking or using, is guilty of a misdemeanor . . . ."[24] Thus, both joyriding statutes make it unlawful to take any motor vehicle without authority, effectively defining an unlawful taking of a vehicle as that which is unauthorized.[25]

Because a taking does not have to be larcenous to be unlawful, the phrase "taken unlawfully" in MCL 500.3113(a) applies to *anyone* who takes a vehicle without the authority of the owner, regardless of whether that person intended to steal it.[26] With this

---

[24] MCL 750.414 contains disjunctive prohibitions: it prohibits someone from "tak[ing]" a motor vehicle "without authority" and, alternatively, it prohibits someone from "us[ing]" a motor vehicle "without authority." Thus, it is possible to violate MCL 750.414 without unlawfully *taking* the vehicle and, as a result, not all violations of MCL 750.414 necessarily constitute unlawful *takings* within the meaning of MCL 500.3113(a). Nevertheless, a taking that violates MCL 750.414 qualifies for the exclusion under MCL 500.3113(a) because it is an *unlawful* taking.

[25] The "authority" referred to in the joyriding statutes is obviously the authority of the owner of the vehicle. Accordingly, for purposes of MCL 500.3113(a), a vehicle is "unlawfully taken" if it is taken without the authority of its owner. See *Farmers Ins Exch v Young*, 489 Mich 909 (2011) (MARKMAN, J., concurring) ("[MCL 500.3113(a)] requires a threshold determination that a vehicle was 'unlawfully taken' from its *owner*."). Therefore, MCL 500.3113(a) does not apply to the lawful owner of a vehicle, even if that person drives it under a circumstance that renders him or her legally unable to operate a vehicle. However, driving while legally unable may have implications under MCL 500.3113(a) for a person who *has* taken a vehicle unlawfully because "as a matter of law, one cannot reasonably believe that he or she is entitled to use a vehicle when the person knows that he or she is unable to legally operate the vehicle." *Amerisure Ins Co v Plumb*, 282 Mich App 417, 431-432; 766 NW2d 878 (2009).

[26] Otherwise, it would have been unnecessary for the Legislature to have created an exception that allows an injured person to recover PIP benefits when he or she "reasonably believed that he or she was entitled to take and use the vehicle." See *Priesman*, 441 Mich at 76 (GRIFFIN, J., dissenting).

Justice HATHAWAY's dissenting opinion claims that this interpretation "precludes a class of injured parties from recovering PIP benefits even when a party was given

12

statutory interpretation in mind, we consider seriatim the theories that the two Court of Appeals panels applied in these cases.

A. *SPECTRUM HEALTH* AND THE "CHAIN OF PERMISSIVE USE" THEORY

In *Spectrum Health*, the Court of Appeals applied the "chain of permissive use" theory from *Bronson* to allow the injured claimant to recover PIP benefits. In *Bronson*, the injured claimant, Mark Forshee, was drinking beer and taking controlled substances with three friends, Thomas Pefley, William Morrow, and Brian Antles.[27] The group was traveling in a car driven by Pefley and owned by his father, who had expressly indicated that only his son could drive the vehicle and who had expressly forbidden Forshee from doing so.[28] The police stopped the car and arrested Pefley for violating his probation by carrying a concealed weapon. Pefley yelled from the police car for Morrow to "take the car home."[29] When the police left with Pefley, Morrow began driving the car. After taking Antles home, Morrow and Forshee purchased a case of beer and continued to use the car.[30] Morrow later allowed Forshee to drive.[31]

---

permission to take a car by an intermediate user." *Post* at 7. This is incorrect because we are only interpreting the phrase "taken unlawfully" in MCL 500.3113(a). An end user who takes a vehicle without authority can still recover PIP benefits as long as he or she "reasonably believed that he or she was entitled to take and use the vehicle." MCL 500.3113(a).

[27] *Bronson*, 198 Mich App at 620.

[28] *Id.* at 625.

[29] *Id.*

[30] *Id.*

[31] *Id.* at 621.

Later that night, another police officer saw the car speeding and signaled the driver to stop.[32]  Forshee instead accelerated and a high-speed chase ensued, ending when the car struck an embankment, ricocheted off a metal post, and landed some 50 feet away.[33] Following a bench trial, the circuit court held in part that Forshee was not eligible for no-fault benefits because he had unlawfully taken the motor vehicle within the meaning of MCL 500.3113(a).[34]

The *Bronson* Court reversed and concluded that Forshee was entitled to recover PIP benefits.  After observing the lack of caselaw interpreting the "unlawful taking" language in MCL 500.3113(a), the *Bronson* Court turned for "guidance [to] the decisions that have construed whether a vehicle was taken with consent for purposes of the owner's liability statute, MCL 257.401."[35]  Specifically, the Court considered this Court's decision in *Cowan v Strecker*[36] and determined that we have "interpreted 'consent' broadly" in the context of an owner's vicarious liability.[37]  *Bronson* then held that an

---

[32] *Id*. at 620-621.

[33] *Id*. at 621.

[34] *Id*. at 621-622.

[35] *Id.* at 623.  MCL 257.401(1) states in part:

> The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge.  It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family.

[36] *Cowan v Strecker*, 394 Mich 110, 229 NW2d 302 (1975).

[37] *Bronson*, 198 Mich App at 623.

owner "'"consents" to assumption of the risks attendant upon his surrender of control regardless of admonitions which would purport to delimit his consent.'"[38]

While *Bronson* recognized that MCL 500.3113(a) "is not concerned with placing the liability of [sic] the proper party, but, rather, with precluding the receipt of [PIP] benefits by someone who has unlawfully taken an automobile,"[39] it nevertheless adopted *Cowan*'s "broad definition of 'consent'" as "of equal applicability" in the no-fault context.[40] In applying this broad definition of consent, the *Bronson* Court observed that "when an owner loans his vehicle to another, it is foreseeable that the borrower may thereafter lend the vehicle to a third party" and concluded that "such further borrowing of the vehicle by the third party is, by implication, with the consent of the owner."[41] This "unbroken chain of permissive use" renders inapplicable the "unlawful taking" exclusion of MCL 500.3113(a).[42]

We hold that the *Bronson* Court's "chain of permissive use" theory is inconsistent with the statutory language of the no-fault act. In articulating its theory, *Bronson* first looked to *another* statutory scheme, the owner's liability statute, to interpret the meaning of MCL 500.3113(a). However, the first step of statutory interpretation is to review the language of the statute at issue, not that of another statute. Indeed, the relevant phrase in

---

[38] *Id.* at 624, quoting *Cowan*, 394 Mich at 115.

[39] *Bronson*, 198 Mich App at 624.

[40] *Id*.

[41] *Id*. at 625.

[42] *Id.*

15

MCL 500.3113(a) that we must interpret, "taken unlawfully," does not appear in the owner's liability statute that *Bronson* considered analogous.

The owner's liability statute, MCL 257.401, differs from the no-fault act in several important respects.[43]   In particular, it explains that the owner "is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge."[44] The owner's liability statute, therefore, considers not just an owner's consent but also the owner's knowledge, which is much broader than the focus in MCL 500.3113(a) on whether the taking was unlawful.  Indeed, the owner's liability statute does not speak in terms of lawfulness or unlawfulness.  Moreover, MCL 500.3113(a) does not contain language regarding *an owner's* "express or implied consent or knowledge" because it examines the legality of the taking from the *driver's* perspective—a perspective that the owner's liability statute lacks.  Therefore, MCL 500.3113(a) does not incorporate from

---

[43] MCL 257.401(1) provides:

> This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant.  The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law.  The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge.  It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family.

[44] *Id.*

16

the owner's liability statute the presumption regarding an owner's consent or knowledge that determines a driver's statutory vicarious liability.

Not only did the *Bronson* Court err by analogizing the owner's liability statute to the no-fault act, it erroneously applied this Court's caselaw interpreting the owner's liability statute. *Cowan* indeed articulated a broad conception of consent in attempting to interpret the broad language in the owner's liability statute.[45]   However, *Bronson*'s complete reliance on *Cowan* is in conflict with other Michigan Supreme Court precedent discussing a vehicle owner's vicarious liability.  In *Fout v Dietz*, this Court emphasized that the holding in *Cowan* provided for an owner's liability when "the owner had initially given consent to the operation of his motor vehicle by others and then had *subsequently* sought, unsuccessfully, to place restrictions on that operation."[46]   However, *Fout* also emphasized that a party may present evidence to "rebut[] the common-law presumption that the vehicle in question was being operated with the express or implied consent of the owner" at the time of the accident.[47]

Furthermore, in *Bieszck v Avis Rent-a-Car System, Inc*, this Court held that a rental contract forbidding anyone under age 25 from operating the rented vehicle conclusively rebutted the presumption that the 21-year-old driver was operating the vehicle with the owner's express or implied consent.[48]   The Court reiterated that the common law and the

---

[45] *Cowan*, 394 Mich 110.

[46] *Fout v Dietz*, 401 Mich 403, 406; 258 NW2d 53 (1977) (emphasis added).

[47] *Id*.

[48] *Bieszck v Avis Rent-a-Car Sys, Inc*, 459 Mich 9; 583 NW2d 691 (1998).

17

owner's liability statute merely *presumed* that an owner has consented to the operation of a vehicle that was voluntarily given to someone else, a presumption that can be rebutted with "'positive, unequivocal, strong and credible evidence'" that a particular use was outside the scope of the consent.[49]

For all these reasons, we believe that the "chain of permissive use" theory set forth in *Bronson* does not faithfully apply the standard articulated in MCL 500.3113(a) to determine whether the claimant "had taken [the vehicle] unlawfully." Therefore, we overrule *Bronson* to the extent it is inconsistent with the plain meaning of MCL 500.3113(a). In examining whether a taking is unlawful within the meaning of MCL 500.3113(a), it is irrelevant whether the taking would have subjected the vehicle's owner to vicarious liability under MCL 257.401. What is relevant to this determination is whether the taking was "without authority" within the meaning of MCL 750.413 or MCL 750.414. If so, then the taking was "unlawful" within the meaning of MCL 500.3113(a).[50]

In applying this principle of law to the facts of this case, we conclude that there is no factual dispute that Craig Sr. gave his consent only to allow Kathleen to use the

---

[49] *Id.* at 19 (citation omitted).

[50] Justice HATHAWAY's dissenting opinion criticizes as "look[ing] outside the text of MCL 500.3113(a)," *post* at 6, the fact that this opinion considers whether a taking violates the criminal joyriding statutes in determining whether an unlawful taking has occurred within the meaning of MCL 500.3113(a). This criticism misses the mark because MCL 500.3113(a) specifically discusses the taking in terms of whether it was "unlawful," and our criminal joyriding statutes consider a taking to be unlawful when it is done "without authority."

18

vehicle and, at the same time, expressly instructed both Kathleen and Craig Jr. that Craig Jr. was not allowed to take and use the vehicle. Thus, Craig Jr. admitted that he had express knowledge that Craig Sr. did not give him consent to take and use the vehicle. As a result, Craig Jr. took his father's vehicle without authority contrary to MCL 750.414 and, therefore, took it unlawfully within the meaning of MCL 500.3113(a).

Spectrum Health argues that Craig Jr. did not unlawfully take the vehicle because Kathleen had given him permission to take it. We disagree because a taking does not have to be forcible to be unlawful. Given the undisputed fact that Craig Jr. took the vehicle *contrary to the express prohibition of the vehicle's owner* (his father), Spectrum Health provides no legal support for its conclusion that Craig Jr.'s actions did not violate MCL 750.414. Accordingly, the circuit court and Court of Appeals erred by granting Spectrum Health's motion for summary disposition because MCL 500.3113(a) precludes PIP benefits in this case.[51] We reverse the lower court judgments and remand this case to the circuit court for further proceedings consistent with this opinion.

## B. *PROGRESSIVE* AND THE "FAMILY JOYRIDING" EXCEPTION

In *Progressive*, the Court of Appeals applied the "family joyriding" exception, first articulated in Justice LEVIN's plurality opinion in *Priesman*,[52] to conclude that MCL

---

[51] Spectrum Health is not entitled to summary disposition on the alternative basis of the family-joyriding exception because that exception is also inconsistent with MCL 500.3113(a) for the reasons we explain in part III(B) of this opinion. Moreover, the same facts that show that Craig Jr. had taken his father's vehicle unlawfully establish that Craig Jr. could not have reasonably believed that he was entitled to take and use the vehicle. Therefore, MCL 500.3113(a) precludes PIP benefits in this case.

[52] *Priesman*, 441 Mich at 60 (opinion by LEVIN, J.).

500.3113(a) did not exclude the claimant from receiving PIP benefits for taking his wife's vehicle contrary to her standing instruction. *Priesman* involved the motor vehicle accident of the vehicle owner's 14-year-old son, Corey, who had taken the vehicle without her permission.[53] The mother's no-fault insurer refused payment pursuant to MCL 500.3113(a), claiming that Corey had unlawfully taken the vehicle.[54] The circuit court granted the insurer's motion for summary disposition, finding no dispute that Corey had violated MCL 750.414 by taking his mother's vehicle without permission.[55] The Court of Appeals reversed the circuit court, concluding that Corey's use "was not unlawful under the no-fault act" and stating, "We cannot say that the Legislature intended that [MCL 500.3113(a)] would apply under the circumstances of this case."[56]

This Court granted leave to appeal,[57] although no majority holding resulted regarding the interpretation of MCL 500.3113(a). In concluding that MCL 500.3113(a)

---

[53] *Id*. at 62.

[54] *Id*.

[55] *Id*. At that time, MCL 750.414 provided, in relevant part: "Any person who takes or uses without authority any motor vehicle without intent to steal the same, or who shall be a party to such unauthorized taking or using, shall upon conviction thereof be guilty of a misdemeanor . . . ." Although MCL 750.414 was amended by 2002 PA 672, the alterations to the quoted language were not substantive.

[56] *Priesman v Meridian Mut Ins Co*, 185 Mich App 123, 126; 460 NW2d 244 (1990).

[57] *Priesman v Meridian Mut Ins Co*, 439 Mich 867 (1991).

20

does not apply to a family member's joyride, Justice LEVIN's plurality opinion first identified other provisions in the no-fault act providing for PIP benefits

> unlimited in amount for every person, including even a person who does not insure a vehicle he owns (except when driving that vehicle) and the spouse and relatives domiciled in the household of the owner of an uninsured vehicle even when driving or riding as a passenger in that uninsured vehicle . . . .[58]

The plurality opinion then looked to the Uniform Motor Vehicle Accident Reparations Act (UMVARA) and explained that the UMVARA "excepts from coverage a 'converter'—a person who steals—unless covered under a no-fault policy issued to the converter or a spouse or other relative in the same household."[59] While the Legislature substituted "taken unlawfully" for "converts" in the UMVARA, the plurality explained the significance of this substitution as only reflecting the Legislature's intent to "except from no-fault coverage thieves while driving stolen vehicles even if they or a spouse or relative had purchased no-fault insurance."[60] The plurality did not believe that the substitution showed the intent to except joyriders from coverage.[61] Rather, the plurality

---

[58] *Priesman*, 441 Mich at 65 (opinion by LEVIN, J.) (emphasis omitted). Justice BOYLE concurred only in the result of Justice LEVIN's opinion.

[59] We stress the sequence of the analysis in *Priesman* to highlight the flawed statutory interpretation that Justice LEVIN's plurality opinion undertook. Rather than reviewing the words of the relevant provision, the opinion instead based its interpretation on the uniform statutory language that the Legislature had rejected in order to further what it considered to be the general purpose of the no-fault act to award unlimited no-fault benefits to family members of insureds. See *id*. at 64-66.

[60] *Id.* at 67.

[61] *Id*.

believed that the Legislature seemingly intended to "simplif[y] the complex verbiage of the no-fault exception, and thereby avoid[] litigation concerning what constitutes 'conversion,' a term of art in criminal and personal property law."[62] Thus, the plurality concluded that the legislative decision to substitute the phrase "taken unlawfully" for the proposed UMVARA term "converts" did not indicate "any substantial difference in scope or meaning."[63]

The plurality, however, did not specifically define the phrase "taken unlawfully" as pertaining exclusively to thieves, but concluded instead that the phrase did *not* include joyriding teenage family members, stating:

> We are not persuaded that legislators, sitting at a drafting session, concluded that the evil against which the UMVARA exception was aimed was not adequate because it did not cover teenagers who "joyride" in their parents' automobiles, especially automobiles covered by no-fault insurance, in the context that countless persons would be entitled, under the legislation they were drafting, to no-fault benefits without regard to whether they are obliged to purchase no-fault insurance or, if obliged to insure, do in fact do so.[64]

Subsequent Court of Appeals panels interpreted this "family joyriding" exception. In *Butterworth*, the Court examined *Priesman* and MCL 500.3113(a) to determine whether that provision applied to an adult family member who did not live with his

---

[62] *Id.*

[63] *Id.* The plurality opinion also relied on a secondary source, which interpreted the "Michigan provision [MCL 500.3113(a)] as excepting a person injured in an automobile that he has 'stolen.'" *Id.* at 68, citing Keeton & Widiss, Insurance Law, § 410, p 422.

[64] *Priesman*, 441 Mich at 68.

parents.[65]  While the Court recognized that "the precedential value of *Priesman* is . . . somewhat problematic," the Court felt "compelled to follow it."[66]  The panel thus concluded that the unlawful-taking exclusion in MCL 500.3113(a) "does not apply to cases where the person taking the vehicle unlawfully is a family member doing so without the intent to steal but, instead, doing so for joyriding purposes."[67]  The panel rejected the insurer's claim that the joyriding exception should not extend to a joyrider who had been expressly prohibited by the owner from driving the vehicle, reasoning that the joyrider's intent remained only to borrow the vehicle, not to steal it.[68]  The panel also rejected the insurer's claim that the joyriding exception should not extend to users who take a vehicle knowing that they are "physically incapable of operating the vehicle safely and . . . not entitled to be a licensed driver."[69]  Last, the panel rejected the insurer's claim that the joyriding exception should not extend to adult joyriders who lived apart from their parents at the time of the accident.  The panel concluded that the age of the joyrider had no legal significance given *Priesman*'s focus on "the fact that the driver was a family member who merely intended to joyride."[70]

---

[65] *Butterworth*, 225 Mich App 244.

[66] *Id.* at 249.

[67] *Id*.

[68] *Id*. at 249-250.

[69] *Id*. at 250.

[70] *Id*. at 251.

Later, the Court of Appeals in *Mester* declined "to extend the *Priesman* holding to apply to *anyone* who is merely joyriding."[71] The panel considered, but ultimately rejected, Judge HOEKSTRA's concurring opinion in *Butterworth*, which had interpreted *Priesman* for the broad proposition that "the legislators intended to except from [PIP] benefits only persons injured while driving a car they intended to *steal* . . . ."[72] The *Mester* panel explained that "the justices of the Supreme Court who recognized a joyriding exception in the *Priesman* case did so not because joyriding does not involve an unlawful taking, but only because of special considerations attendant to the joyriding use of a family vehicle by a family member."[73] In *Allen*, the Court of Appeals reaffirmed *Mester*'s limitation of the family-joyriding exception to motor vehicle users who were related to the owners.[74]

Finally, in *Roberts*, an inebriated 12-year-old, Kyle Roberts, was injured while driving his landlord's vehicle, which Kyle's mother had been allowed to use on a regular basis.[75] Relying on the no-fault act's definition of "owner" in MCL 500.3101 and the Court of Appeals' previous recognition that "there may be more than one 'owner' of a vehicle,"[76] the majority concluded that Kyle's mother was properly considered an owner

---

[71] *Mester*, 235 Mich App at 88 (emphasis added).

[72] *Butterworth*, 225 Mich App at 253 (HOEKSTRA, J., concurring).

[73] *Mester*, 235 Mich App at 88.

[74] *Allen*, 268 Mich App at 347-348.

[75] *Roberts*, 282 Mich App at 342.

[76] *Id*. at 354-355.

of the vehicle. As a result, the family-joyriding exception allowed Kyle to claim PIP benefits.[77]

As stated, Justice LEVIN's plurality opinion in *Priesman* is the only instance in which this Court addressed the "taken unlawfully" language in MCL 500.3113(a). It is axiomatic that the *first step* of statutory interpretation is to review the language of the statute itself. Yet *Priesman* relied more on the language of the UMVARA and its commentary to interpret MCL 500.3113(a) than on the actual text of MCL 500.3113(a) enacted by the Legislature.

This Court has previously expressed disapproval of relying on model acts to interpret existing statutes rather than on the clear language of the actual statutes at issue. In *Jarrad v Integon National Insurance Co*,[78] we overruled the Court of Appeals' decision in *Spencer v Hartford Accident & Indemnity Co*,[79] which had interpreted the phrase "other health and accident coverage" in MCL 500.3109a by reference to the UMVARA. In *Spencer*, the plaintiff was injured in a motor vehicle accident during work and sought no-fault benefits.[80] The insurer argued that the wage-continuation benefits the plaintiff received pursuant to a union agreement were "other health and accident coverage" under MCL 500.3109a and were therefore subject to coordination with no-

---

[77] *Id*.

[78] *Jarrad v Integon Nat'l Ins Co*, 472 Mich 207; 696 NW2d 621 (2005).

[79] *Spencer v Hartford Accident & Indemnity Co*, 179 Mich App 389; 445 NW2d 520 (1989).

[80] *Id*. at 391.

25

fault benefits.[81] The court referred to the counterpart language in the UMVARA and compared it with the statutory text.[82] The model language provided that PIP benefits were to be coordinated with "'loss otherwise compensated by benefits or advantages a person receives or is unconditionally entitled to receive from any other specified source . . . .'"[83] The Court of Appeals also found it "clear from the comments that, under the UMVARA, wage continuation benefits pursuant to a union agreement were intended to be coordinated with no-fault benefits otherwise payable."[84]

> The *Spencer* Court held in this regard that
>
> [i]nstead of adopting the broader language of the uniform act, . . . the Michigan act was drafted much more narrowly, and limited coordination to "other health and accident coverage." It appears, therefore, that in enacting the Michigan act the Legislature did not intend for no-fault benefits to be coordinated with a broad array of other benefits which may perhaps be equally duplicative.[85]

In response to this holding, this Court emphasized in *Jarrad* "that a court's fundamental interpretive obligation is to discern the legislative intent that may reasonably be inferred from the words expressed in the statute."[86] And we stated that the *Spencer* Court simply had not analyzed the language of the statute. Rather, *Spencer* had perfunctorily held that

---

[81] *Id.* at 395.

[82] *Id.* at 398-399.

[83] *Id.* at 399.

[84] *Id.* at 400.

[85] *Id.*

[86] *Jarrad*, 472 Mich at 221, citing *Koontz v Ameritech Serv, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

"(1) the statute is narrower than the model provision, and (2) the statute must therefore produce a different outcome than the model provision would generate."[87] We explained that "[a] court may not simply announce that the text of a statute differs from the language in a model act . . . as an excuse to avoid the court's duty to interpret the statutory text adopted by the Legislature."[88]

The plurality opinion in *Priesman* appears to have embraced the erroneous method of statutory interpretation advanced by the Court of Appeals in *Spencer* and subsequently rejected by this Court in *Jarrad*.[89] Rather than taking the first step of statutory

---

[87] *Jarrad*, 472 Mich at 222.

[88] *Id*. at 223 (emphasis omitted).

[89] Justice CAVANAGH's dissenting opinion notes that "this Court has previously looked to the UMVARA as a source of guidance in construing provisions of the no-fault act." *Post* at 4. However, in two of the cases cited, the language of the UMVARA was the same as the language of the Michigan provisions under consideration. See *MacDonald v State Farm Mut Ins Co*, 419 Mich 146, 151; 350 NW2d 233 (1984) (stating that MCL 500.3107(b) is "virtually identical" to the corresponding provision of the UMVARA), and *Thornton v Allstate Ins Co*, 425 Mich 643, 657; 391 NW2d 320 (1986) (construing the phrase "arising out of the use of a motor vehicle as a motor vehicle" in MCL 500.3105, which is identical to the corresponding provision in the UMVARA).

The third case, *Donajkowski v Alpena Power Co*, 460 Mich 243; 596 NW2d 574 (1999), is clearly distinguishable. This Court recognized that Michigan common law prohibited an intentional tortfeasor from seeking contribution. *Id*. at 249. The Legislature enacted a contribution statute, MCL 600.2925a(1), which provided in part that "'when 2 or more persons become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death, there is a right of contribution among them . . . .'" *Id*. at 247. This Court properly concluded that the Legislature did not intend any limitation or prohibition concerning intentional tortfeasors. *Id*. at 250. Indeed, the statute refers to liability "in tort" including "wrongful death," which obviously may include an intentional tort. This Court only noted that MCL 600.2925a(1) "was based upon the model contribution act that itself retained the prohibition recognized in our common law . . . ." *Id*. at 257 n 14. The Court simply pointed out that "[t]he fact that our Legislature did not include this restriction in adopting

---

27

interpretation, i.e., examining the relevant statute, the *Priesman* plurality referred to the

its version of the model contribution act is significant to any good-faith effort to give meaning to the Legislature's intent." *Id*. *Donajkowski* relied on the absence of language in MCL 600.2925a(1) because it differed from the Michigan common-law rule. That the model contribution act included this common-law distinction merely supported the Court's conclusion. *Donajkowski* is clearly distinguishable because the enacted statutory language at issue here is different from that of the UMVARA, not omitted.

More important is that in none of these cases did this Court find that the model act provides more guidance than the actual text of the enacted statute. In this case, the language of the relevant statute differs from the corresponding provision of the model act, yet Justice CAVANAGH still holds the belief that "'the Legislature did not intend any substantial difference in scope or meaning from the prototypical UMVARA concept excepting thieves from no-fault coverage . . . .'" *Post* at 5, quoting *Priesman*, 441 Mich at 67-68. There is a very substantial difference between language that excludes only car thieves from receiving PIP benefits and language that excludes all persons who have unlawfully taken vehicles from receiving PIP benefits.

Some 20 years after *Priesman*, Justice CAVANAGH still seeks to insert into Michigan Law the UMVARA provision that "except[ed] from coverage a 'converter'—a person who steals—unless covered under a no-fault policy issued to the converter or a spouse or other relative in the same household." *Priesman*, 441 Mich at 66 (opinion by LEVIN, J.) (emphasis omitted). He admits as much by endorsing *Priesman*'s attempt to "g[i]ve meaning" to the statute's language by "consider[ing] the modifications that the Legislature made to the model act that was the starting point for the statute that was eventually enacted." *Post* at 3-4. Contrary to Justice CAVANAGH's assertion, our "true disagreement with *Priesman* is [not] that *Priesman* simply defined the phrase 'taken unlawfully' more narrowly than . . . [we] would like." *Post* at 5. Our disagreement is that *Priesman* did not consider the statute as the *starting point*; rather, it first considered the UMVARA, then concluded that the Legislature intended to exclude "only car thieves" from receiving PIP benefits. Of course, the Legislature clearly could have readily excluded "only car thieves" and indeed could have simply adopted the UMVARA language and excluded "converters." Instead, the Legislature decided to except from PIP benefits persons who have "unlawfully taken" the vehicle. Rather than accepting this Legislative decision, Justice CAVANAGH prefers an interpretation in which any person can take and use any other person's vehicle with or without the owner's permission at any time for whatever reason as long as the person merely intends to return the vehicle at some later point in time. This interpretation is not grounded in the text of MCL 500.3113(a) and would, in fact, serve to entice uninsured persons to unlawfully take vehicles for joyrides.

UMVARA and compared the UMVARA—which used the term "converter"—to the relevant phrase in MCL 500.3113(a), "taken unlawfully." From this difference, the plurality presumed that "[t]he legislative purpose, in rejecting the UMVARA language, was thus to except from no-fault coverage thieves while driving stolen vehicles even if they or a spouse or relative had purchased no-fault insurance, and not necessarily to except joyriders from coverage."[90] This presumption is entirely unfounded. The only legislative purpose that can be gleaned from the text of MCL 500.3113(a) is the intent to exclude persons who had unlawfully taken vehicles.

We conclude that the family-joyriding exception is not supported by the text of MCL 500.3113(a). Unlike the plurality opinion in *Priesman*, our decision is not based on the presumed driving habits of legislators or their families, and we certainly will not speculate whether, "sitting at a drafting session,"[91] a majority of legislators collectively decided that family joyriders are entitled to PIP benefits, regardless of any circumstances surrounding the taking of the vehicle. Rather, we simply refer to the statutory text, which provides that

> [a] *person* is not entitled to be paid [PIP] benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The *person* was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the *person* reasonably believed that he or she was entitled to take and use the vehicle.[92]

---

[90] *Priesman*, 441 Mich at 67 (opinion by LEVIN, J.).

[91] *Id*. at 68.

[92] MCL 500.3113(a) (emphasis added).

"If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted."[93] There is absolutely no textual basis to support a family-joyriding exception to MCL 500.3113(a).

The plurality decision in *Priesman* demonstrates the ramifications of decisions that stray from the statutory text.[94] The plurality decision strayed by sanctioning a child's unlawful taking of his parent's motor vehicle. *Butterworth* expanded the joyriding exception to include even an adult family member who did not reside in the home of the insured and who had been expressly prohibited from taking the vehicle. *Mester* and *Allen* reaffirmed the family-joyriding exception, while *Roberts* expanded the exception to encompass someone who was not a family member of the vehicle's title owner, but a family member of someone who had received permission to use the vehicle from the title owner. Therefore, we conclude that Justice LEVIN's plurality opinion in *Priesman* and its progeny—including *Butterworth*,[95] *Mester*,[96] *Allen*,[97] and *Roberts*[98]—did not apply the plain meaning of MCL 500.3113(a).

---

[93] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[94] We disagree with the sweeping proposition in Justice HATHAWAY's dissenting opinion that "the purpose of the no-fault act [is] to provide a source and means of recovery to persons injured in auto accidents." *Post* at 7. What is commonly referred to as "the no-fault act" for the sake of convenience is in fact the no-fault *insurance* act. The purpose of the act can be derived from its express language. Given that the express language of MCL 500.3113(a) excludes drivers from receiving benefits under these circumstances, it is the exclusion of benefits that effectuates the purpose of the no-fault act.

[95] *Butterworth*, 225 Mich App 244.

[96] *Mester*, 235 Mich App 84.

## C. STARE DECISIS AND RETROACTIVITY

*Priesman* was not a majority opinion of the Court. As a result, the principles of stare decisis do not apply to *Priesman*:

> "The clear rule in Michigan is that a majority of the Court must agree on a ground for decision in order to make that binding precedent for future cases. If there is merely a majority for a particular result, then the parties to the case are bound by the judgment but the case is not authority beyond the immediate parties."[99]

Thus, Justice LEVIN's plurality opinion *Priesman* only bound the parties before it and does not bind this Court's decision. Likewise, *Butterworth*, *Mester*, *Allen*, and *Roberts* are Court of Appeals decisions, and, as such, are not binding precedent in this Court.

"'The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law.'"[100] This principle does have an exception: When a

> "statute law has received a given construction by the courts of last resort and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated, nor vested rights acquired under them impaired, by a change of construction made by a subsequent decision."[101]

---

[97] *Allen*, 268 Mich App 342.

[98] *Roberts*, 282 Mich App 339.

[99] *People v Sexton*, 458 Mich 43, 65; 580 NW2d 404 (1998), quoting *People v Anderson*, 389 Mich 155, 170; 205 NW2d 461 (1973).

[100] *Gentzler v Constantine Village Clerk*, 320 Mich 394, 398; 31 NW2d 668 (1948).

[101] *Id.* (citation and emphasis omitted).

Spectrum Health and Mary Free Bed claim that this opinion should only apply prospectively. They maintain that insurance companies set their premiums to reflect the family-joyriding exception and that it is the medical providers and insureds who will suffer the consequences of this opinion. Justice CAVANAGH similarly claims there is an expectation that family members who drive a family vehicle without express permission will be covered. However, it is undisputed that there is no contractual right to have insurance companies provide PIP benefits to operators in these cases.[102] Indeed, Ryan DeYoung is a named excluded driver on the policy purchased from Progressive. In other words, our decision today does not at all affect the parties' contractual rights, and it is retrospective in its operation.

## IV. CONCLUSION

Our decision today applies the plain language of MCL 500.3113(a), which excludes from receiving PIP benefits someone who "was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle."

Therefore, any person who takes a vehicle contrary to a provision of the Michigan Penal Code—including MCL 750.413 and MCL 750.414, informally known as the

---

[102] See *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003) (holding that the approach to contractual interpretation in which "judges divine the parties' reasonable expectations and then rewrite the contract accordingly" is "contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy"); see also *Singer v American States Ins*, 245 Mich App 370, 381 n 8, 631 NW2d 34 (2001).

"joyriding" statutes—has taken the vehicle unlawfully within the meaning of MCL 500.3113(a).

We overrule *Bronson*'s "chain of permissive use" theory, which incorporated concepts from the owner's liability statute, as inconsistent with MCL 500.3113(a). The owner's liability statute establishes an owner's civil liability for injury caused by the negligent operation of his or her vehicle *whenever* the vehicle was "being driven" with the owner's "express or implied knowledge or consent." Because its focus on the unlawful nature of the taking involves the *driver's* authority to take the vehicle, MCL 500.3113(a) is not analogous to the owner's liability statute.

Because the legality of the taking does not turn on whether the driver intended to steal the car, MCL 500.3113(a) applies equally to joyriders. Moreover, because MCL 500.3113 refers to "*a* person," the Legislature clearly and plainly intended to exclude from receiving PIP benefits even a relative who took a vehicle unlawfully. Therefore, we disavow Justice LEVIN's plurality opinion in *Priesman* and overrule its Court of Appeals progeny as inconsistent with MCL 500.3113(a).

Accordingly, in both *Spectrum Health* (Docket No. 142874) and *Progressive* (Docket No. 143330), we reverse the Court of Appeals' judgments and remand these cases to the respective circuit courts for further proceedings consistent with this opinion.

> Brian K. Zahra
> Robert P. Young, Jr.
> Stephen J. Markman
> Mary Beth Kelly

STATE OF MICHIGAN

SUPREME COURT

SPECTRUM HEALTH HOSPITALS,

      Plaintiff-Appellee,

v                            No. 142874

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN and FARM
BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

      Defendants-Appellants.

_____

PROGRESSIVE MARATHON
INSURANCE COMPANY,

      Plaintiff/Cross-Defendant-
Appellant

v                            No. 143330

RYAN DeYOUNG and NICOLE L.
DeYOUNG,

      Defendants,

and

SPECTRUM HEALTH HOSPITALS and
MARY FREE BED REHABILITATION
HOSPITAL,

      Intervenors/Cross-Plaintiffs-
      Appellees,

and

_____

CITIZENS INSURANCE COMPANY OF AMERICA,

> Intervenor/Cross-Defendant-
> Appellee.

---

CAVANAGH, J. (*dissenting*).

I respectfully dissent from the majority's decision to reject the well-established caselaw interpreting the availability of personal protection insurance (PIP) benefits under MCL 500.3113(a). Instead, I would reaffirm the "chain of permissive use" doctrine as well as the interpretation of MCL 500.3113(a) from *Priesman v Meridian Mut Ins Co*, 441 Mich 60; 490 NW2d 314 (1992). Because the Court of Appeals panels in these cases correctly applied these principles, I would affirm the Court of Appeals' judgment in both cases.

Under MCL 500.3113(a), an injured person is barred from recovering PIP benefits if the injured person "was using a motor vehicle or motorcycle which he or she had *taken unlawfully* . . . ." (Emphasis added.) In *Priesman*, the lead opinion held that the insured's teenage son, who drove his mother's vehicle without express permission, had not taken the vehicle unlawfully for purposes of MCL 500.3113(a). *Priesman*'s analysis formally became part of Michigan's caselaw when it was adopted by the Court of Appeals in *Butterworth Hosp v Farm Bureau Ins Co*, 225 Mich App 244; 570 NW2d 304 (1997). Thus, in accordance with MCR 7.215(J)(1),[1] the Court of Appeals in *Progressive*

---

[1] MCR 7.215(J)(1) states, in relevant part:

> A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on

2

*Marathon Ins Co v DeYoung*, unpublished opinion per curiam of the Court of Appeals, issued May 24, 2011 (Docket No. 296592), accurately applied *Priesman*'s progeny as binding caselaw to conclude that MCL 500.3113(a) does not prohibit Ryan DeYoung from recovering PIP benefits.

The majority now reverses the Court of Appeals in *Progressive* and discards *Priesman* and its progeny, claiming that *Priesman* erroneously interpreted MCL 500.3113(a). The majority's reading of *Priesman* is flawed, however. To begin with, the majority inaccurately claims that *Priesman* "stray[ed] from" and is thus entirely divorced from the statutory language in MCL 500.3113(a). *Ante* at 30. Rather, like the majority opinion in this case, *Priesman* focused on the requirement that the vehicle be "taken unlawfully" in order to trigger the exclusion under MCL 500.3113(a).

*Priesman* gave meaning to this phrase by reviewing the Uniform Motor Vehicle Accident Reparations Act (UMVARA). Contrary to the majority's claims, consideration of the UMVARA was an entirely logical approach to determining the legislative intent behind MCL 500.3113(a) because, as the lead opinion in *Priesman* explained, MCL 500.3113(a) was modeled after a provision in the UMVARA. Accordingly, an obvious method for determining the legislative intent behind MCL 500.3113(a) and the plain meaning of the words used was to determine what the Legislature intended to accomplish by modifying the language of the model provision from which MCL 500.3113(a) was ultimately crafted. Thus, the majority is incorrect when it implies that *Priesman* "rel[ied]

---

or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals . . . .

3

on [a] model act[] . . . rather than the clear language of [the] actual statute at issue." *Ante* at 25. Rather, to define the critical phrase used in the statute[], *Priesman* merely considered the modifications that the Legislature made to the model act that was the starting point for the statute that was eventually enacted. Notably, *Priesman* did not break new ground in considering the UMVARA; indeed, this Court has previously considered the UMVARA as a source of guidance in construing provisions of the no-fault act. See, e.g., *MacDonald v State Farm Mut Ins Co*, 419 Mich 146; 350 NW2d 233 (1984), and *Thornton v Allstate Ins Co*, 425 Mich 643, 391 NW2d 320 (1986); see, also, *Donajkowski v Alpena Power Co*, 460 Mich 243, 257 n 14; 596 NW2d 574 (1999) (finding the fact that the Legislature deviated from a model act "significant to any good-faith effort to give meaning to the Legislature's intent").[2]

*Priesman* specifically focused on the fact that the UMVARA "except[ed] from coverage a 'converter'—a person who steals—*unless* covered under a no-fault policy issued to the converter or a spouse or other relative in the same household." *Priesman*, 441 Mich at 66. *Priesman* concluded that

> [t]he legislative purpose, in rejecting the UMVARA language, was thus to except from no-fault coverage *thieves while driving stolen vehicles* even if they or a spouse or relative had purchased no-fault insurance, and not necessarily to except joyriders from coverage. At the same time, the

---

[2] In citing these cases, I do not argue that *Priesman*'s consideration of the UMVARA is identical to this Court's consideration of the UMVARA in *MacDonald*, *Thornton*, or any other case for that matter. Rather, I merely note that, contrary to the majority's apparent belief that model acts are not worthy of *any* consideration regardless of the role that the model act may have played in the legislative process, this Court has previously concluded that, under certain circumstances, model acts are a valid tool in determining the Legislature's intent. I believe that *Priesman* aptly explained why it was proper to use the UMVARA as a tool to interpret MCL 500.3113(a).

4

Legislature simplified the complex verbiage of the no-fault exception, and thereby avoided litigation concerning what constitutes "conversion," a term of art in criminal and personal property law. [*Id.* at 67 (emphasis added).]

Accordingly, *Priesman* definitively concluded that the phrase "taken unlawfully" included car thieves but not those who simply drive a vehicle without express permission and without the intent to steal the vehicle. *Priesman* also concluded that "in substituting 'taken unlawfully' for 'converts,' the Legislature did not intend any substantial difference in scope or meaning from the prototypical UMVARA concept excepting thieves from no-fault coverage . . . ." *Id.* at 67-68.[3]

In summary, *Priesman* closely considered the critical phrase within MCL 500.3113(a)—"taken unlawfully"—and merely acted to define that phrase, which the majority admits is not defined in the statute. Moreover, *Priesman* considered a logical source for that definition, given the legislative process that created MCL 500.3113(a). Accordingly, it appears that the majority's true disagreement with *Priesman* is that *Priesman* simply defined the phrase "taken unlawfully" more narrowly than the majority would like. This is not a sufficient justification for the majority's decision to supplant more than 15 years of this state's jurisprudence.

---

[3] In support of this conclusion, *Priesman* cited Keeton & Widiss's treatise on insurance law, which explained that

"[e]xclusions from PIP coverage apply to the owner of a vehicle who does not purchase the mandatory coverage and who is injured in his own vehicle; a person injured in an automobile that *he has stolen;* and a non-resident who does not have coverage that has been certified by his insurer." [*Priesman*, 441 Mich at 68 n 15, citing Keeton & Widiss, Insurance Law, § 410, p 422.]

5

The majority also argues that it is proper to consider the Michigan Penal Code, MCL 750.1 *et seq.*, to give meaning to the phrase "taken unlawfully." Ironically, this approach runs afoul of the majority's conclusion that *Priesman* erred because it considered sources other than the statutory text at issue. Other than the majority's strained exaggeration of its carefully selected dictionary definitions, there is no indication that it is proper to resort to the Penal Code to give meaning to a specific phrase in the no-fault act. It is axiomatic, however, that "[w]hen considering the correct interpretation, the statute must be read as a whole" and that "[i]ndividual words and phrases, while important, should be read in the context of the *entire legislative scheme*." *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 528; ___ NW2d ___ (2012) (emphasis added, citations omitted). Accordingly, while the majority is apparently compelled by a dictionary to look outside the no-fault act, I am compelled by the canons of statutory interpretation to conclude that *Priesman* wisely recognized that MCL 500.3113(a) must be considered within the full context of the no-fault act and that *Priesman*, therefore, correctly concluded that the Legislature's intent to provide broad accessibility to benefits informed the proper interpretation of MCL 500.3113(a). *Priesman*, 441 Mich at 64-66.[4]

---

[4] Although the majority is correct that taking a car with the intent to steal is a violation of the Penal Code, the majority unsuccessfully attempts a leap in logic to conclude that the phrase "taken unlawfully" *must* refer to the Penal Code. In my view, *Priesman* persuasively explains that when the phrase "taken unlawfully" in MCL 500.3113(a) is considered in the context of the entire no-fault act as the rules of statutory interpretation require, the Legislature did not intend the broad meaning that the majority imparts on the phrase "taken unlawfully." Accordingly, the majority is obviously mistaken in concluding that I "tacitly admit[]" that the phrase "taken unlawfully" in MCL 500.3113(a) "can only refer to the Michigan Penal Code." *Ante* at 11 n 22.

6

The majority ignores the legislative intent to provide broad accessibility to benefits by conflating the concept of providing PIP benefits to a person who made a poor decision with that of endorsing that person's conduct. See *ante* at 28 n 89 (implying that *Priesman* condones or encourages a person's decision to joyride). *Priesman* no more condoned or encouraged this conduct than the no-fault act condones or encourages any other irresponsible conduct that results in an automobile accident. Nevertheless, a person who causes an accident by texting, fiddling with the radio, or simply daydreaming while driving is generally entitled to PIP benefits. Accordingly, if the majority truly believes that *Priesman* would "serve to entice" joyriders, *ante* at 28 n 89, the majority must also believe that the no-fault act entices other types of irresponsible conduct that is likely to cause automobile accidents. Moreover, I seriously doubt that the average would-be joyrider pauses to consider the availability of PIP coverage when deciding to go for a spin in another person's car.

The majority also relies heavily on the Court of Appeals' opinions in *Butterworth*, 225 Mich App 244, and *Mester v State Farm Mut Ins Co*, 235 Mich App 84; 596 NW2d 205 (1999), to support its mischaracterization and dismissal of *Priesman*'s analysis. Although those opinions reached the right result under *Priesman*'s analysis, they also improperly interpreted *Priesman*. Specifically, *Butterworth* stated that MCL 500.3113(a) "does not apply to cases where the person *taking the vehicle unlawfully* is a family member doing so without the intent to steal but, instead, doing so for joyriding purposes." *Butterworth*, 225 Mich App at 249 (emphasis added). Similarly, *Mester* stated that "the justices of the Supreme Court who recognized a joyriding exception in the *Priesman* case did so *not because joyriding does not involve an unlawful taking*, but only because of

7

special considerations attendant to the joyriding use of a family vehicle by a family member." *Mester*, 235 Mich App at 88 (emphasis added). Indeed, nowhere in the *Priesman* plurality opinion did Justice LEVIN use the phrase "family joyriding exception," and *Butterworth* coined the phrase "'family member' joyriding exception" by citing Justice GRIFFIN's *Priesman* dissent rather than Justice LEVIN's lead opinion. *Butterworth*, 225 Mich App at 248.

These statements in *Butterworth* and *Mester* are erroneous because *Priesman* accurately interpreted the phrase "taken unlawfully" as including *only car thieves*. Accordingly, *Butterworth* and *Mester* incorrectly concluded that *Priesman* "exempts" a person who "takes the vehicle unlawfully." Instead, *Priesman* held that a vehicle that was driven without express permission does not meet the definition of one that was "taken unlawfully" under MCL 500.3113(a). Moreover, the majority in *Butterworth* rejected Judge HOEKSTRA's concurring opinion, in which he argued that a person's familial relationship to the owner of a car is irrelevant when applying *Priesman*. Judge HOEKSTRA concluded that nothing in *Priesman* supported the *Butterworth* majority's conclusion; rather, Judge HOEKSTRA determined that *Priesman* stood for the proposition that "the legislators intended to except from [PIP] benefits only persons injured while driving a car they intended to *steal* . . . ." *Butterworth*, 225 Mich App at 253 (HOEKSTRA, J., concurring).

Judge HOEKSTRA was correct in his interpretation of *Priesman*'s holding. Specifically, *Priesman* expressly stated that "[t]he legislative purpose . . . was thus to except from no-fault coverage *thieves while driving stolen vehicles* . . . ." *Priesman*, 441 Mich at 67 (emphasis added). Accordingly, Judge HOEKSTRA accurately concluded that

8

*Priesman*'s discussion of the family relationship at issue in that case "was merely part of the factual basis of the case and did not establish a limiting parameter for interpreting the Court's remaining discussion." *Butterworth*, 225 Mich App at 253 (HOEKSTRA, J., concurring). Thus, I would reject *Butterworth* and *Mester* to the extent that those opinions are inconsistent with the proper interpretation of *Priesman*. Additionally, I would clarify this area of law by eliminating the misleading label "family joyriding *exception*." There is no "exception"; rather, *Priesman* simply applied the rules of statutory interpretation to give meaning to the phrase "taken unlawfully" as it is used in MCL 500.3113(a).

Finally, although the principles of stare decisis do not apply to *Priesman* because it is a plurality opinion, it should not go unnoticed that the Court of Appeals adopted *Priesman*'s holding and those Court of Appeals opinions have been binding law for the last 15 years.[5] Accordingly, as applied by the Court of Appeals, the rule has created an expectation that, at a minimum, a family member who drives a family vehicle without express permission would be covered for PIP benefits. Furthermore, insureds have paid their insurance premiums for the last 15 years with this expectation.[6] The majority may

---

[5] It is also noteworthy that the Legislature has not chosen to modify MCL 500.3113(a) in response to *Priesman* and its progeny. If the majority is correct that *Priesman* was a grossly inaccurate interpretation of the Legislature's intent that has caused untold harm, it would seem that the Legislature would have acted to vindicate its true intent.

[6] It is important to note that although Ryan DeYoung was an excluded driver under the policy at issue in *Progressive*, that exclusion only applied to tort coverage. Pursuant to the language in the policy itself, Ryan was not excluded from recovering PIP benefits. Thus, despite the majority's attempt to inject this issue in support of its holding, the Court of Appeals correctly concluded that the excluded-driver provision is irrelevant. Only the caselaw interpreting the meaning of "taken unlawfully" in MCL 500.3113(a) governs

9

not agree with *Priesman*; however, *Priesman* is nevertheless a reasonable interpretation of the statutory language, and the Court of Appeals caselaw adopting and applying the rule is *binding law*. MCR 7.215(J)(1). Accordingly, insurers and insureds alike have rightfully conformed their conduct in reliance on *Priesman*'s progeny. Thus, I believe that although *Priesman* and its progeny are not entitled to stare decisis consideration, the reliance interests related to this area of the law are significant, worthy of some consideration, and strongly counsel against departing from the existing state of the law.[7]

Accordingly, I see no reason to reject *Priesman*. I would instead affirm the judgment of the Court of Appeals in *Progressive* and uphold *Priesman*'s interpretation of MCL 500.3113(a). Additionally, I agree with Justice HATHAWAY's conclusion that the Court of Appeals in *Spectrum Health* did not clearly err by holding that Craig Smith, Jr.,

---

whether Ryan is entitled to PIP benefits, which, under *Priesman*'s progeny, the Court of Appeals in *Progressive* correctly concluded that he is.

[7] The correction of the Court of Appeals' misinterpretation of *Priesman* that I propose would not have the same negative effect that the majority opinion will have on the reliance interests at issue because insureds would not be denied coverage that was previously provided. Stated differently, despite their erroneous interpretation of *Priesman*, the previous Court of Appeals opinions nevertheless reached the right result.

Furthermore, the majority misinterprets my discussion of the reliance interests related to *Priesman* and its progeny to the extent that the majority reads my analysis to argue that the majority decision in this case should have prospective effect only. Rather, I discuss the reliance interests at issue to further explain why I disagree with the majority's decision to discard 15 years of binding caselaw. Specifically, not only do I believe that *Priesman* is a proper interpretation of the statute, but because insureds and insurers have relied on that interpretation and conformed their conduct accordingly, I believe any disturbance of those reliance interests is unwarranted.

10

did not unlawfully take the vehicle.  Thus, I would also affirm the judgment of the Court of Appeals in *Spectrum Health*.

Michael F. Cavanagh
Marilyn Kelly
Diane M. Hathaway (with respect
    to *Progressive* only)

STATE OF MICHIGAN

SUPREME COURT

SPECTRUM HEALTH HOSPITALS,

        Plaintiff-Appellee,

v                                   No. 142874

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN and FARM
BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendants-Appellants.

_____

PROGRESSIVE MARATHON
INSURANCE COMPANY,

        Plaintiff/Cross-Defendant-
        Appellant,

v                                   No. 143330

RYAN DeYOUNG and NICOLE L.
DeYOUNG,

        Defendants,

and

SPECTRUM HEALTH HOSPITALS and
MARY FREE BED REHABILITATION
HOSPITAL,

        Intervenors/Cross-Plaintiffs-
        Appellees,

and

_____

CITIZENS INSURANCE COMPANY OF
AMERICA,

Intervenor/Cross-Defendant-
Appellee.

HATHAWAY, J. (*dissenting*).

I fully join Justice CAVANAGH's dissenting opinion with respect to today's decision in *Progressive Marathon Insurance Company v DeYoung*. I write separately to address the majority's decision in *Spectrum Health Hospitals v Farm Bureau Mutual Insurance Company of Michigan*, in which the majority rejects and discards the "chain of permissive use" theory. I am not persuaded that this theory should be discarded. It is a well-reasoned and well-established doctrine that has been part of this state's jurisprudence for decades.

At issue in *Spectrum Health* is the proper interpretation of MCL 500.3113, which provides in pertinent part:

> A person is not entitled to be paid [PIP] benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.

As the language of the statute provides, MCL 500.3113(a) generally precludes an injured person from recovering personal protection insurance (PIP) benefits under a policy associated with a vehicle if that person had taken the vehicle unlawfully. The question before us in *Spectrum* involves determining whether the PIP claimant's taking of the vehicle in question was unlawful under this provision.

2

Because the no-fault act does not define "taken unlawfully," courts have looked beyond the words of the statute to effectuate the intent of the Legislature. In giving this phrase meaning, our courts have developed the doctrine known as the chain-of-permissive-use theory. I would affirm the Court of Appeals' judgment in *Spectrum Health*[1] because the Court of Appeals properly applied this theory to the facts before it.

The chain-of-permissive-use theory was first recognized in *Bronson Methodist Hospital v Forshee*.[2] In *Bronson*, the Court of Appeals held that a person had not unlawfully taken the car in which he was later injured even though he had not been given permission by the owner to use the car. The vehicle owner's son, Thomas Pefley, was arrested while driving with friends in his family's car. Given that he was under arrest, he asked one of his friends, William Morrow, to take the car home. Later that night, Morrow let another friend, Mark Forshee, drive the car. Forshee was intoxicated and eventually crashed the car after being chased by police. The primary issue in the case was whether Forshee had unlawfully taken the car and was therefore excluded from recovering PIP benefits under MCL 500.3113(a).

The unanimous panel in *Bronson* noted that there was no caselaw that specifically defined "taken unlawfully" as that phrase is used in the no-fault act.[3] Accordingly, the *Bronson* panel turned to a similar area of law involving a vehicle owner's liability.

---

[1] *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, unpublished opinion per curiam of the Court of Appeals, issued February 24, 2011 (Docket No. 296976).

[2] *Bronson Methodist Hosp v Forshee*, 198 Mich App 617; 499 NW2d 423 (1993).

[3] *Id.* at 623.

Specifically, the panel considered this Court's decision in *Cowan v Strecker*,[4] which involved the taking of a vehicle with the consent of an intermediate user but without the express consent of the owner. While *Cowan* did not involve the no-fault act, it involved a similar statute, MCL 257.401, commonly known as the owner's liability statute.

In *Cowan*, the owner of the vehicle loaned it to an acquaintance with the express direction to not let anyone else use it. Nevertheless, the acquaintance let her son use the car, and he was involved in an accident. This Court determined that the owner of the vehicle was liable under the owner's liability statute, based on a broad understanding of consent. The Court reasoned that given the owner's willing surrender of the vehicle to the acquaintance, the owner had consented to the risks inherent in surrendering control of a vehicle to another, "regardless of admonitions which would purport to delimit his consent."[5] Thus, this Court held that an owner's consent to an intermediate user included the consent to any subsequent users of the vehicle, even when the owner set restrictions on the use by the intermediate user.

The Court of Appeals in *Bronson* found this Court's interpretation of the owner's liability statute persuasive and applied the same analysis and reasoning to the unlawful-taking provision contained within the no-fault act. As such, *Bronson* held that when an owner of a vehicle gives permission to an intermediate user to take the vehicle, the intermediate user then has the authority to give permission to a subsequent user to take

---

[4] *Cowan v Strecker*, 394 Mich 110; 229 NW2d 302 (1975).

[5] *Id*. at 115.

4

that vehicle. Therefore, the subsequent user in *Bronson* had lawfully taken the vehicle with the consent of the owner under the no-fault act.[6]

In *Spectrum Health*, the Court of Appeals correctly applied the chain-of-permissive-use theory to the facts before it. Plaintiff, Spectrum Health Hospitals, seeks to recover the cost of care that it provided to Craig Smith Jr. from the insurer of a truck owned by Craig Smith Jr.'s father, Craig Smith Sr. Craig Sr.'s truck was insured by defendant Farm Bureau Mutual Insurance Company of Michigan. Farm Bureau claims that Craig Jr. is excluded from coverage under MCL 500.3113(a) because he had taken his father's truck unlawfully. Craig Sr. had loaned the truck to Craig Jr.'s girlfriend with instructions not to let Craig Jr. drive it. However, Craig Jr.'s girlfriend did allow him to drive it, and he was involved in an accident. Spectrum Health treated Craig Jr. and brought the instant suit to recover PIP benefits associated with his care. Both the trial court and the Court of Appeals held that Craig Jr. was not excluded from coverage under the chain-of-permissive-use theory because Craig Sr. had turned control of the truck over to Craig Jr.'s girlfriend, and she in turn gave Craig Jr. permission to use the truck. The majority's decision overrules the Court of Appeals and discards the well-established chain-of-permissive-use theory.

I disagree with the majority because the Court of Appeals correctly applied *Bronson* and the chain-of-permissive-use theory based on *Cowan*. I find that the *Bronson* analysis was a well-reasoned interpretation of the phrase "taken unlawfully" in its context within MCL 500.3113(a). It is reasonable to assume that the Legislature intended "taken

---

[6] *Bronson*, 198 Mich App at 625.

5

unlawfully" to be applied in terms of consent of the owner, and this Court in *Cowan* properly defined what the consent of an owner includes. The majority's opinion simply substitutes its own definition of "taken unlawfully" for the well-established definition set forth in *Bronson*. However, the definition in *Bronson* was consistent with the policy of this state under the no-fault act that "'persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery.'"[7] Unfortunately, the majority's new definition strays from this policy when there is no compelling reason to do so.

The majority criticizes *Bronson* for looking outside the text of the no-fault act in order to determine the meaning of "taken unlawfully." The majority expresses concern that *Bronson* relied on the meaning of an owner's "consent," a term found only in one unrelated provision of the no-fault act. See MCL 500.3116(3). However, the majority uses the same approach in reaching its definition of "taken unlawfully." Specifically, the majority looks outside the text of MCL 500.3113(a) and relies on the word "authority," which is also found only in one unrelated provision of the no-fault act. See MCL 500.3104(1). In its search for the meaning of "taken unlawfully," the majority looks to the dictionary for the definitions of "unlawful" and "take." From the dictionary definitions, the majority concludes that "taken unlawfully" refers to a criminal act. Then, just as the panel did in *Bronson*, the majority seeks guidance from a statute governing another area of law, and it turns to MCL 750.414, a statute that places criminal liability on a person who "takes or uses without authority any motor vehicle without intent to steal

---

[7] *Coburn v Fox*, 425 Mich 300, 311 n 3; 389 NW2d 424 (1986) (citation omitted).

the same . . . ." The majority focuses on the word "authority" in the criminal statute despite the fact that "authority" is not found in the relevant provision of the no-fault act. It then concludes that if a person takes a vehicle against the express wishes of the owner, he or she has taken the vehicle without the owner's "authority" and has done so unlawfully under the no-fault act. Thus, like *Bronson*'s reliance on "consent" from the owner's liability statute, the majority relies on an owner's "authority" under another area of law. Given that the majority engages in the same "outside the text of the statute" analysis, its criticisms of *Bronson* fall flat.

I disagree with the majority's interpretation of "taken unlawfully." Its interpretation precludes a class of injured parties from recovering PIP benefits even when a party was given permission to take a car by an intermediate user. The *Bronson* interpretation is the better interpretation because it was more consistent with the purpose of the no-fault act to provide a source and means of recovery to persons injured in auto accidents. The majority's interpretation conflicts with that purpose. Moreover, the idea that the consent of an owner can be passed down though a chain of permissive users is well established in the law, and I see no reason to depart from it.

Accordingly, I respectfully dissent. I would affirm the judgment of the Court of Appeals in *Spectrum Health* because it correctly applied the well-reasoned and well-established chain-of-permissive-use theory.

Diane M. Hathaway
Marilyn Kelly

7