*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALFONZO WASHINGTON,

        Plaintiff-Appellant,

v

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,

        Defendant-Appellee,

and

FARM BUREAU MUTUAL INSURANCE COMPANY and KIERRA MIDDLETON,

        Defendants.

UNPUBLISHED
December 10, 2025
2:05 PM

Nos. 370452; 370821
Wayne Circuit Court
LC No. 22-006418-NI

Before: TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

In this insurance coverage dispute involving personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, in Docket No. 370452, plaintiff appeals by leave granted[1] the order granting partial summary disposition to defendant, Nationwide Mutual Fire Insurance Company (Nationwide), regarding an unlawful taking of a vehicle precluding plaintiff's claims. In Docket No. 370821, plaintiff appeals as of right an order granting partial summary disposition to Nationwide based upon application of MCL 500.3173a(4)'s statutory fraud exclusion to plaintiff's application for benefits to the Michigan automobile insurance placement facility (MAIPF) through the Michigan Assigned Claims Plan (MACP), which was the final order in the case. The matters were consolidated "[o]n the Court's own motion pursuant to MCR 7.216(A)(7)[.]" *Washington v Nationwide Mut Fire Ins Co*, unpublished order of the Court of

---

[1] *Washington v Nationwide Mut Fire Ins Co*, unpublished order of the Court of Appeals, entered October 21, 2024 (Docket No. 370452).

Appeals, entered October 21, 2024 (Docket No. 370452). We reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter stems from two automobile accidents involving plaintiff in May 2021 ("the first accident") and in April 2022 ("the second accident"). When plaintiff was probably 13 or 14 years old, he was involved in a motorcycle accident and broke his right leg ("the motorcycle accident"). He thereafter recovered completely from that accident. Plaintiff lived with his girlfriend, defendant, Kierra Middleton, when the first of the two motor vehicle accidents that are the subject of this litigation occurred in May 2021. On the day of that accident, plaintiff had to visit his mother, Trina Robbins. He drove Middleton's Jeep sport utility vehicle (SUV) on the highway without a valid driver's license. While driving, another driver collided with plaintiff's vehicle. Plaintiff sustained multiple injuries, including to his neck, back, left leg (including a fractured femur and knee injuries), and had three surgeries. He remained in the hospital for about a month. In his application for insurance benefits from the MAIPF, plaintiff stated that he had Middleton's permission to use the SUV.

At the time of the second accident in April 2022, plaintiff was a passenger in a sedan being driven by Arneata Chantal Cobbs, who collided with another vehicle when she was changing lanes. In his MAIPF application for the second accident, plaintiff named Angelica-Noel Christelle Jordan as the owner of the vehicle and Cobbs as the driver. Plaintiff sustained injuries to his head, lower back, neck and both legs. Since the first accident, his mother, Trina Robbins, has helped him with daily activities.

It is undisputed on appeal that plaintiff did not have automobile insurance on the date of either accident and that he submitted claims for both accidents to the MAIPF through the MACP. Nationwide was assigned as the insurer for the first accident and defendant, Farm Bureau Mutual Insurance Company (Farm Bureau), was initially assigned as the insurer for the second accident. Nationwide was later assigned to be the insurer for the second accident.

Plaintiff filed his initial complaint against Nationwide and Middleton seeking to: (1) recover PIP benefits from Nationwide for injuries sustained during the first accident; and (2) hold Middleton liable for her negligence in causing the first accident. Plaintiff then successfully moved to amend his complaint to include details regarding the second accident and name Farm Bureau as a defendant. Plaintiff filed an amended complaint to include details regarding both accidents. He alleged Middleton was involved in the first accident and Nationwide was responsible for payment of PIP benefits. Plaintiff further alleged that Farm Bureau was responsible for payment of PIP benefits regarding the second accident. Counts I and II of the amended complaint sought the same relief as the original complaint, but a third count was added seeking Farm Bureau's payment of PIP benefits for the second accident. By stipulation of the parties, Nationwide was "substituted in the place of [Farm Bureau] as the insurer for all claims and defenses asserted in this lawsuit arising out of the [second accident]."

Nationwide moved for summary disposition under MCR 2.116(C)(10), asserting that plaintiff's unlawful taking of the subject vehicle required the dismissal of his claims related to the first accident. Relying on *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 4; 972 NW2d

860 (2021), it argued plaintiff committed an unlawful taking under MCL 500.3113(a) when he drove Middleton's vehicle without a valid driver's license in violation of MCL 257.301. Nationwide then cited *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503; 821 NW2d 117 (2012), to argue that a vehicle is unlawfully taken when driven without the authority of its owner. It asserted plaintiff should not be able to rely on this Court's holding in *Monaco v Home-Owners Ins Co*, 317 Mich App 738; 896 NW2d 32 (2016). Nationwide contended, even if Middleton allowed plaintiff to drive the SUV, his conduct was an unlawful taking because he did not have a valid driver's license. Plaintiff's response argued that driving without a driver's license is an unlawful *use*, but not an unlawful *taking*, and that he had permission to drive the SUV, such that he is not disqualified from receiving PIP benefits. Nationwide's reply reasserted that *Ahmed*'s binding authority compelled a grant of summary disposition.

The trial court determined plaintiff committed an unlawful taking because driving the SUV without a license was an unlawful use under *Ahmed*, explaining:

> [I]f you operate a car unlawfully, that means you've taken it unlawfully. And there's . . . no question of fact in this particular case that this [p]laintiff operated the car unlawfully. He didn't have a license, . . . there's no dispute about that. That when he drove, this was his girlfriend's car that he drove, it was in May of 2021, but there's no dispute . . . he didn't have a license at that point . . . .

The trial court granted the motion for partial summary disposition regarding the unlawful taking, finding that plaintiff was ineligible for PIP benefits for the first accident, and dismissed his claim against Nationwide.

Plaintiff timely sought reconsideration, arguing that he had permission to use the SUV on the date of the first accident, that there was no unlawful taking under *Ahmed*, and that unlawful use is not an unlawful taking under MCL 500.3113(a). The trial court granted the motion for reconsideration, concluding, under *Monaco*, that "the unlawful operation of the vehicle in this case does not constitute an unlawful taking for purposes of MCL 500.3113(a)." Nationwide then timely sought reconsideration of the order granting reconsideration, arguing the trial court erred in its reliance on *Monaco*, because the language of MCL 500.3113(a) has changed since that opinion was published and that this Court's opinion in *Swoope v Citizens Ins Co of the Midwest*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 364924), controls.[2] The trial court granted Nationwide's motion for reconsideration. It relied on *Swoope*'s holding that, "[a]ny violation of the criminal law that leads to a taking of a motor vehicle will constitute and 'unlawful taking' for purposes of MCR 500.3113(a)," and that operating a vehicle without a valid driver's license is included among such violations. *Swoope*, ___ Mich App at ___; slip op at 3, quoting *Ahmed*, 337 Mich App at 11 n 5. The trial court held that plaintiff "knew or should have known the vehicle was taken illegally, as he should have known it is illegal to drive without a license." The order

---

[2] *Swoope* is currently pending on appeal to the Michigan Supreme Court. Other relevant cases are being held in abeyance pending the resolution of *Swoope*, including *VHS of Mich, Inc v State Farm Mut Auto Ins Co*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 365479), and *Bradley v Westfield Ins Co*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 365828).

granting plaintiff's motion for reconsideration was vacated. This Court then granted plaintiff's application for leave to appeal from the order granting Nationwide's motion for reconsideration.

Nationwide separately moved for partial summary disposition under MCR 2.116(C)(10) regarding an alleged material misrepresentation by plaintiff in omitting information about whether he had "any of the same or similar injuries" before his second accident at section 24 of his application for insurance benefits to the MAIPF under the MACP. Nationwide contended this was a violation of MCL 500.3173a(4), and that, as a result, plaintiff was ineligible to receive PIP benefits. Plaintiff's response argued that his failure to respond to section 24 of the application did not constitute a false or fraudulent *statement*, and that there was no evidence he committed a "fraudulent insurance act" under MCL 500.3173a(4) by knowingly making a statement containing materially false information under section 24. The trial court noted plaintiff "left blank" sections 24-25 on his MAIPF application after the second accident that regarded "past injuries" and his "conditions and medications before the accident," even though Nationwide made no argument based on section 25. The trial court noted "false information to the Assigned Claims Plan is equivalent to a fraudulent insurance act" under MCL 500.3173a(4). The trial court noted the information regarding prior injuries sought by section 24 of the application was material, and found plaintiff knew the question seeking information regarding prior injuries was "important" because he answered "none that he could recall" in response to that question in his MAIPF application for his first accident. The trial court found that plaintiff leaving section 24 blank on the MAIPF application for the second accident when he previously provided a response to that section on his application for the first accident constituted "a false statement on this application by leaving that question, No. 24, blank" in violation of MCL 500.3173a. The trial court granted Nationwide partial summary disposition and dismissed plaintiff's claims regarding the second accident, whereupon plaintiff filed a claim of appeal. This Court granted the application for leave to appeal from the grant of summary disposition of plaintiff's claim arising from the first accident (Docket No. 370452) and consolidated it with the claim of appeal in Docket No. 370821. *Washington v Nationwide Mut Fire Ins Co*, unpublished order of the Court of Appeals, entered October 21, 2024 (Docket No. 370452).

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court "review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A de-novo review means [this Court] review[s] the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted). Nationwide sought partial summary disposition in two separate motions pursuant to MCR 2.116(C)(10), and the trial court granted the motions under this subrule having considered evidence outside of the pleadings. A motion for summary disposition under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160.

> When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves

-4-

open an issue upon which reasonable minds might differ. [*Id*. (quotation marks and citations omitted).]

"The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Miller Estate v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020).

Statutory interpretation presents a question of law that this Court . . . reviews de novo. *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 493; 791 NW2d 853 (2010).

A trial court's decision on a motion for reconsideration is reviewed for an abuse of discretion. *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Id*.

## B. UNLAWFUL TAKING AND THE FIRST ACCIDENT

Plaintiff contends the trial court erred by determining plaintiff unlawfully took the SUV under MCL 500.3113(a) and granting Nationwide's motion for partial summary disposition, which dismissed his claims for PIP benefits attributable to the first accident. Because there is a question of fact regarding whether plaintiff was permitted to drive the SUV during the first accident, we agree.

Plaintiff argues he cannot be barred recovery of PIP benefits owed as a result of the first accident because he did not unlawfully take the SUV, but merely used it unlawfully. Plaintiff argues that driving the SUV without a license does not constitute an unlawful taking and he had permission from Middleton to operate the SUV when the first accident occurred. Plaintiff contends the only relevant question in determining whether an unlawful taking occurred under MCL 500.3113(a) is how plaintiff came to possess the SUV (and how he used it after gaining possession is of no consequence to the inquiry).

Under MCL 257.301, "an individual shall not drive a motor vehicle on a highway in this state unless that individual has a valid operator's or chauffeur's license . . . ." An insurer may avoid having to pay PIP benefits coverage pursuant to MCL 500.3113. *Spectrum Health*, 492 Mich at 516. MCL 500.3113 states, in pertinent part:

> A person is not entitled to be paid [PIP] benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully.

MCL 500.3113(a) "examines the legality of the taking from the *driver's* perspective," and "[b]ecause a taking does not have to be larcenous to be unlawful, the phrase 'taken unlawfully' in

-5-

MCL 500.3113(a) applies to *anyone* who takes a vehicle without the authority of the owner, regardless of whether that person intended to steal it" including, for example, a joyrider. *Spectrum Health*, 492 Mich at 518, 522, 537; MCL 750.413-.414 (joyriding statutes). "Despite the change in the language of MCL 500.3113(a) and the elimination of the safe-harbor provision, the key term, 'taken unlawfully,' has the same meaning under the present version as it had under the old version."[3] *Ahmed*, 337 Mich App at 10.

*Ahmed* set forth a three-part test for determining whether a person is disqualified from PIP benefits by MCL 500.3113(a) ("the *Ahmed* test"), holding that "the disqualification applies to any person (1) 'willingly operating or willingly using a motor vehicle or motorcycle' that (2) was unlawfully taken by someone, and (3) the person seeking benefits 'knew or should have known' that the motor vehicle was taken unlawfully." *Id.*, quoting MCL 500.3113(a). "[S]tated differently, such a person is disqualified from eligibility for benefits unless the person had no reason to know that the taking was unlawful. *Id.* at 23. *Ahmed* noted generally that "any violation of the criminal law that leads to a taking of a motor vehicle will constitute an 'unlawful taking' for purposes of MCL 500.3113(a)," *id.* at 11 n 5, and further, that a violation of MCL 257.301 (driving without a license) was unlawful "because there are associated criminal penalties," *id.* at 19 n 8.

This Court in *Ahmed* granted summary disposition to the defendant insurance company on plaintiff's claim for PIP benefits because the plaintiff was unlicensed and therefore not authorized under a car rental agreement "to use, operate, or drive the motor vehicle[.]" *Id.* at 5. "As a result, [the] plaintiff's taking of the vehicle was in violation of MCL 750.414 and thus was unlawful; additionally, [the] plaintiff should have known of the unlawful nature of the taking." *Id.*

However, "[t]he first level of inquiry when applying MCL 500.3113(a) always concerns whether the taking of a vehicle was unlawful, and if the taking was lawful, the inquiry ends because the statute is inapplicable." *Monaco*, 317 Mich App at 747. The *Monaco* Court recognized a "distinction between unlawfully taking a motor vehicle and unlawfully using a vehicle," explaining that "obtaining possession of an object is very different from employing that object or putting it into service." *Id.* at 749 (quotation marks and citation omitted). In *Monaco*, the plaintiff named insured, as next friend for her teenage daughter, sought PIP benefits for her daughter, who was

---

[3] This Court explained the safe-harbor provision eliminated by the 2014 amendment to MCL 500.3113(a) in *Ahmed*:

> 2014 PA 489 made substantive changes to MCL 500.3113(a), eliminating the safe-harbor provision and imposing instead a scienter requirement. Under the safe-harbor provision, a person was not disqualified from eligibility for benefits so long as the person had a reasonable belief that the taking of the vehicle was lawful, even if such belief was erroneous. Following the amendment, a person who willingly operates or willingly uses a motor vehicle that someone took unlawfully is disqualified from eligibility for benefits if the person "knew or should have known" that the taking of the motor vehicle was unlawful; stated differently, such a person is disqualified from eligibility for benefits unless the person had no reason to know that the taking was unlawful. The new scienter standard is thus significantly more restrictive than was the safe-harbor provision. [*Ahmed*, 337 Mich App at 23.]

-6-

injured while driving plaintiff's vehicle. *Id*. at 741-742. The daughter had a permit to drive the vehicle, but was not "accompanied by a licensed parent, guardian, or 21-year-old" as the permit required. *Id*. at 741-742. The plaintiff nonetheless gave her daughter "permission to take and drive the car on her own at the time of the accident." *Id*. at 743. This Court concluded:

> Although it may have been unlawful for [the] plaintiff, as owner of the car, to authorize or permit [the daughter] to drive the vehicle in violation of the law, it had no bearing on, nor did it negate, the authorization and permission given by [the] plaintiff for [the daughter] to take the vehicle. [The daughter] did not gain[] possession of [the] vehicle contrary to Michigan law; rather, she unlawfully used the vehicle, i.e., [the daughter] put[] it into service in violation of Michigan law[.] [The] [p]laintiff was not in violation of MCL 257.326 by merely allowing [the daughter] to take possession and control of the car; it was the permission allowing [the daughter] to drive the car that implicated MCL 257.326. While [the] plaintiff's actions might have subjected her to prosecution under MCL 257.326, they did not turn an authorized or permitted taking into an unlawful taking. [*Monaco*, 317 Mich App at 750 (quotation marks and citations omitted).]

*Ahmed* distinguished its facts from those in *Monaco*: while the teenager in *Monaco* had the car owner's permission to take and drive the vehicle, in *Ahmed*, the plaintiff's "taking of the car . . . was directly contrary to Meade Lexus's express written terms." *Ahmed*, 337 Mich App at 21.

The *Ahmed* Court noted, "in *Monaco*, the analysis was short and straightforward—the taking was with the owner's permission, and therefore [the daughter] did not have the *mens rea* of taking the car contrary to the owner's authorization." *Id*. at 19. *Ahmed* acknowledged it was bound to follow *Monaco*'s narrow holding pursuant to MCR 7.215(J)(1), but noted its disagreement with its dicta: "[W]hether or not conduct was lawful from the perspective of the owner is not the relevant inquiry under MCL 500.3113(a). Instead, *Monaco* should have considered whether the taking was unlawful from the perspective of [the daughter], the driver[.]" *Ahmed*, 337 Mich App at 19 n 8. The *Ahmed* Court continued:

> Therefore, had *Monaco* considered the question from [the daughter's] perspective, it should have concluded that her driving of the car constituted a taking and that the taking was unlawful because it was illegal under the Michigan Motor Vehicle Code for [the daughter] to drive alone.
>
> . . . We trust that *Monaco* is and will remain an outlier—the situation in which a car owner tells a person whom the owner knows to be unlicensed under the circumstances that the person nevertheless may drive the car. We think both cases at issue in *Spectrum Health*, and this case, present the much more likely scenario of an unlicensed person taking a motor vehicle in contravention of the owner's express directives not to take it. Consequently, because *Monaco* is only controlling in the situation in which the owner purports to give permission to an unlicensed person to drive, we have no occasion to call for a special panel pursuant to MCR 7.215(J). We simply note the possible need for a special panel if a case involving facts similar to *Monaco*'s should recur. [*Id*.]

In this Court's subsequent decision in *Swoope*, the plaintiff drove her friend's vehicle without a driver's license and the trial court denied the defendant insurance company's motion for summary disposition. *Swoope*, ___ Mich App at ___; slip op at 1-2. Relying solely on the *Ahmed* test, this Court determined summary disposition was proper and reversed for further proceedings. *Swoope*, ___ Mich App at ___; slip op at 4. The *Swoope* Court held:

> [A]ny violation of the criminal law that leads to a taking of a motor vehicle will constitute an unlawful taking for purposes of MCL 500.3113(a). Violations of criminal law include certain provisions of the Michigan Vehicle Code, MCL 257.1 *et seq*. For example, MCL 257.301 concerns the legality of operating a vehicle without a valid driver's license. It states, in part: [A]n individual shall not drive a motor vehicle on a highway in this state unless that individual has a valid operator's or chauffeur's license with the appropriate group designation and indorsements for the type or class of vehicle being driven or towed. Violations of this statute are considered unlawful for purposes of MCL 500.3113(a) because there are related criminal penalties. [*Swoope*, ___ Mich App at ___; slip op at 3 (quotation marks and citations omitted).]

The first prong of the *Ahmed* test was not in dispute as the parties on appeal agreed that the plaintiff operated the vehicle willingly. *Id*. at ___; slip op at 3 n 3. Next, the *Swoope* Court found the plaintiff's admission "she did not have a valid license" met the second prong of the *Ahmed* test (that the vehicle was unlawfully taken by someone) "because operating a vehicle without a valid license is unlawful for purposes of MCL 500.3113(a)." *Swoope*, ___ Mich App at ___; slip op at 4.

> This evidence also satisfied the third prong, whether [the] plaintiff knew or should have known the motor vehicle was taken unlawfully. [The] [p]laintiff testified she knew her license was suspended when she took the vehicle and therefore she should have understood that driving the vehicle without a valid license was unlawful. . . . [The] [p]laintiff also admitted during her deposition that the vehicle's owner did not give her permission to drive the car. As noted above, the "should have known standard" is only satisfied if the plaintiff took any steps to determine whether the owner authorized the taking. By [the] plaintiff's own admission, she failed to take any steps to ensure the taking was authorized. Accordingly, [the] defendant satisfied its preliminary burden to demonstrate that there existed no genuine question of fact for a jury to resolve.

> The burden then shifted to [the] plaintiff to demonstrate a genuine question of material fact to be resolved at trial. Although [the] plaintiff presented some documentary evidence in support of her response to the motion for summary disposition, none of this evidence showed she had a valid driver's license at the time of the accident. Moreover, she offered no evidence showing the vehicle's owner authorized her use of the vehicle. She, therefore, failed to meet her burden as the nonmoving party. Summary disposition should have been granted on this basis, and the trial court erred when it concluded otherwise. [*Id*. at ___; slip op at 4 (quotation marks and citations omitted).]

MCL 500.3113(a) has been further addressed by this Court in *VHS of Mich, Inc v State Farm Mut Auto Ins Co*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 365479), and *Bradley v Westfield Ins Co*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 365828).[4] In *VHS*, this Court reversed the trial court's order granting summary disposition in favor of the defendants, including the MAIPF and an unnamed assignee of the MAIPF. *VHS*, ___ Mich App at ___; slip op at 1-2. The plaintiff provided medical treatment to Michael Dantzler after he was injured in a motor vehicle accident. *Id*. at ___; slip op at 2. Dantzler was a mechanic and repaired the vehicle for a customer who had dropped it off at Dantzler's home. *Id*. Later that evening, after having consumed alcohol, Dantzler drove the vehicle without a license and with two child passengers. *Id*. Dantzler crashed the vehicle and was injured. *Id*. The vehicle was found to be stolen from its owner, Anthony Martin, whom Dantzler did not know. *Id*. The plaintiff medical care provider contended Dantzler did not unlawfully take the vehicle, but merely used it unlawfully, and the plaintiff should not be precluded from receiving PIP benefits for its treatment of Dantzler under MCL 500.3113(a). *Id*. at ___; slip op at 3.

The *VHS* Court stated there was an unlawful use of the vehicle when Dantzler drove it without a license and after having consumed alcohol in violation of MCL 257.301(1) and MCL 257.625(1)(b). *VHS*, ___ Mich App at ___; slip op at 5-6. It found that: "[T]o determine whether Dantzler was disqualified from eligibility for PIP benefits under MCL 500.3113(a), the issue becomes whether there was any *taking* of the Charger and whether there was a nexus between any taking—i.e., how Dantzler *gained possession*—of the Charger and the unlawful acts committed by Dantzler." *Id*. at ___; slip op at 6, citing *Spectrum Health*, 492 Mich at 517, and *Ahmed*, 337 Mich App at 10, 11 n 5. In other words, the issue was "whether Dantzler's particular violations of the criminal law actually led to a taking of [the] motor vehicle such that an unlawful taking . . . occurred." *VHS*, ___ Mich App at ___; slip op at 6 (quotation marks and citations omitted; alteration in original). The *VHS* Court determined there was an "unlawful taking by *someone* because the Charger was taken from its owner, Martin, without Martin's authority" in satisfaction of the second prong of the *Ahmed* test. *Id*. The third prong is to determine whether "the person who was operating the vehicle knew or should have known that the motor vehicle . . . was taken unlawfully in order for that person to be disqualified from PIP benefits." *Id*. (quotation marks and citations omitted). The *VHS* Court found there was no evidence Dantzler "knew that the Charger had been stolen or that he had any indication to suspect that it could have been stolen," such that the third prong of the *Ahmed* test was not met and he was therefore not disqualified from receiving PIP benefits "on the basis of the initial unlawful taking from Martin." *Id*. at ___; slip op at 6-7 (quotation marks and citation omitted).

The *VHS* Court stated the "next question" was whether "Danztler's unlawful *use* of the Charger—driving it without a license and while intoxicated—after the Charger had already come into his possession constitutes an unlawful taking[.]" *Id*. at ___; slip op at 7. This Court noted, under *Monaco* and earlier caselaw, there is a difference between an unlawful *use or operation* and an unlawful *taking* of a motor vehicle, and the "question in determining whether there was an unlawful taking . . . is whether there was a voluntary transfer of possession of the vehicle, . . . and

---

[4] As stated, these cases are being held in abeyance by the Michigan Supreme Court pending the resolution of *Swoope*.

not whether the subsequent use of the vehicle . . . exceeded the scope of the use authorized by the owner." *VHS*, ___ Mich App at ___; slip op at 8. *VHS* determined Dantzler did not commit an unlawful taking because his unlawful acts, including driving without a license, occurred "only after [he] had gained possession," and the unlawful acts "had no connection to the manner in which Dantzler gained possession of the Charger." *Id*. at ___; slip op at 9. This Court stated that *Ahmed* and *Swoope* do "not require a different conclusion" because the facts in each case are distinguishable, and there is no evidence showing Danztler's "taking of possession of the Charger when it was left with him . . . was somehow unauthorized or unlawful." *VHS*, ___ Mich App at ___; slip op at 9-10.

Next, in *Bradley*, this Court reversed the trial court's order granting summary disposition in favor of the defendant insurance company. *Bradley*, ___ Mich App at ___; slip op at 1. Clementine Bradley had an automobile insurance policy with the defendant and that company was unaware that Bradley lived with her daughter, the plaintiff. *Id*. The plaintiff was injured in a motor vehicle accident and sought PIP benefits from the defendant. *Id*. The plaintiff did not have a driver's license, but her mother, Bradley, did not know the plaintiff's license had been suspended "until after the accident." *Id*. at ___; slip op at 2. The defendant unilaterally rescinded the insurance policy because Bradley never disclosed that the plaintiff lived in her household, and the trial court determined the plaintiff "was not entitled to receive PIP benefits[.]" *Id*. at ___; slip op at 1-2. In addition to considering whether Clementine committed fraud in her application and if rescission was proper, this Court likewise addressed MCL 500.3113(a) and determined it did not bar the plaintiff's recovery of PIP benefits. *Bradley*, ___ Mich App at ___; slip op at 2. The *Bradley* Court noted there was "conflicting caselaw on the topic," but determined that "[p]ursuant to the first-out rule, MCR 7.215(J)(1), we are bound by the older caselaw to hold that [the] plaintiff did not unlawfully take Clementine Bradley's car and is therefore entitled to recovery." *Id*. at ___; slip op at 9-10. This Court provided an overview of *Monaco* and *Ahmed*, stating: "[W]hile this Court in *Ahmed* concluded that the plaintiff took the vehicle unlawfully, it reaffirmed the holding in *Monaco* that the unlawful operation of a vehicle with the permission of the vehicle's owner is a lawful taking." *Bradley*, ___ Mich App at ___; slip op at 10-11. The *Bradley* Court stated *Swoope* "overlook[ed] *Monaco* and misappl[ied] *Ahmed*," and "ignored the plain language of the statute by replacing the phrase 'taken unlawfully' with the phrase 'operated unlawfully.' " *Bradley*, ___ Mich App at ___; slip op at 11. *Bradley* emphasized that if a plaintiff "ha[s] permission from the vehicle's owner to use the vehicle," that "end[s] the analysis—there [was] no unlawful taking." *Id*., citing *Monaco*, 317 Mich App at 747. The *Bradley* Court found *Swoope* erroneously "eliminated the distinction between taking and operating," whereas the statute makes clear that the pertinent inquiry is whether the operation of use *follows an unlawful taking*. *Bradley*, ___ Mich App at ___; slip op at 11. *Bradley* followed *Monaco*'s earlier binding precedent and critiqued the outcome in *Swoope* because, while *Swoope* accurately quoted *Ahmed*'s statement that "[a]ny violation of the criminal law that leads to a taking of a motor vehicle will constitute an 'unlawful taking' for purposes of MCL 500.3113(a)," in application, it overlooked that, under the *Ahmed* test, there remains a "need to show that the violation of criminal law 'leads' to a taking." *Bradley*, ___ Mich App at ___, slip op at 12, quoting *Swoope*, ___ Mich App at ___, slip op at 3.

After the decisions in *Spectrum Health* and *Monaco*, as well as the recent decisions in *VHS* and *Bradley*, this Court is tasked with determining " 'whether the taking of a vehicle was unlawful, and if the taking was lawful, the inquiry ends because the statute is inapplicable.' " *Bradley*, ___ Mich App at ___; slip op at 10, quoting *Monaco*, 317 Mich App at 747. *Ahmed* also recognized:

"[F]or purposes of MCL 500.3113(a), a vehicle is 'unlawfully taken' if it is taken without the authority of its owner, and thus requires a threshold determination that a vehicle was 'unlawfully taken' from its owner." *Ahmed*, 337 Mich App at 12 (quotation marks and citation omitted). "Thus, MCL 500.3113(a) examines the legality of the taking from the driver's perspective[.]" *Id.* (quotation marks and citations omitted).

In this case, it is undisputed and the record establishes that plaintiff drove the SUV without a valid driver's license in the first accident. We find no testimony in the lower court record indicating that plaintiff had Middleton's permission to drive the SUV the day of the first motor vehicle collision.[5] However, the record contains plaintiff's application for PIP benefits to the MAIPF after the first accident. Importantly, subsection 42.k. of that application inquired: "Did you have permission to use the vehicle/motorcycle on the date of the accident?" and plaintiff checked the box indicating: "Yes[.]" Further, subsection 42.g. asked: "Have you ever had to ask permission to use the vehicle/motorcycle?" and plaintiff indicated: "No[.]" Subsection 42.h. asked: "Have you ever been denied permission to use the vehicle/motorcycle?" and plaintiff indicated: "No[.]" Viewing the foregoing evidence in a light most favorable to plaintiff, there exists a genuine issue of material fact for the jury's resolution whether plaintiff had the owner's permission to use the SUV on the date of the first accident. For this reason summary disposition pursuant to MCR 2.116(C)(10) should not have been granted on the issue whether plaintiff was entitled to recover PIP benefits owed as a result of the first accident notwithstanding MCR 500.3113(a). There is an issue of material fact whether plaintiff, the driver of the SUV, believed his *taking* was lawful under MCL 500.3113(a). See *Ahmed*, 337 Mich App at 19 n 8, quoting *Spectrum Health*, 492 Mich at 522, and *Rambin v Allstate Ins Co*, 495 Mich 316, 323 n 7; 852 NW2d 34 (2014) ("MCL 500.3113(a) 'examines the legality of a taking from the *driver's* perspective.' ").

If it is determined plaintiff's taking was lawful, that ends the analysis and MCL 500.3113(a) would not apply. See *Ahmed*, 337 Mich App at 19, quoting *Monaco*, 317 Mich App at 747 (" 'The first level of inquiry when applying MCL 500.3113(a) always concerns whether the taking of a vehicle was unlawful, and if the taking was lawful, the inquiry ends because the statute is inapplicable.' "); see also *Bradley*, ___ Mich App at ___; slip op at 11, citing *Monaco*, 317 Mich App at 747 (If a plaintiff "ha[s] permission from the vehicle's owner to use the vehicle," then that "end[s] the analysis—there [was] no unlawful taking."). Although plaintiff unlawfully drove the SUV without a license in violation of MCL 257.301, as reaffirmed by *Bradley*, "the unlawful operation of a vehicle with the permission of the vehicle's owner is a lawful taking." *Bradley*, ___

---

[5] While plaintiff included the entire transcript of his first deposition in his appendix on appeal, it appears from our review of the lower court record, that only six pages of that transcript were filed in the trial court, and our de novo review is accordingly limited to those six pages. MCR 7.210(A)(1); MCR 7.212(C)(6); *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal.").

Mich App at ___; slip op at 11 Further, "the unlawful use of a vehicle . . . is not relevant under the unlawful taking language in MCL 500.3113[.]" *Rambin*, 495 Mich at 331.

Because there is an issue of material fact whether plaintiff had permission to drive the SUV, this case is similar to the facts in *VHS*, in which Dantzler did not commit an unlawful taking because his unlawful acts, including driving without a license, occurred "only after [he] had gained possession," and the unlawful acts "had no connection to the manner in which Dantzler gained possession of the Charger." *Id*. at ___; slip op at 9. Likewise, because there is an issue of material fact whether plaintiff had permission to drive the SUV, this case would also be factually distinguishable from *Ahmed* and *Swoope*, in which the respective plaintiffs did not have permission to drive the respective vehicles.[6]

## C. STATUTORY FRAUD EXCLUSION AND THE SECOND ACCIDENT

Plaintiff also asserts the trial court erred by granting Nationwide's motion for partial summary disposition based upon his committing a fraudulent insurance act in his application to the MAIPF pursuant to MCL 500.3173a(4), which dismissed plaintiff's claims for PIP benefits stemming from the second accident. We agree.

"When an individual cannot obtain no-fault insurance coverage after an accident through ordinary means, the MAIPF fills in the gaps." *Williamson v AAA of Mich*, 513 Mich 264, 271; 15 NW3d 546 (2024); see also MCL 500.3301. "The no-fault act directs the MAIPF to 'adopt and maintain an assigned claims plan.' " *Williamson*, 513 Mich at 271, quoting MCL 500.3171(2). "The Legislature thus established the MACP to provide an injured person with coverage when there is no other applicable insurer." *Williamson*, 513 Mich at 271; see also MCL 500.3172(1).

[T]he Legislature provided that every person injured in a motor vehicle accident would have access to PIP benefits unless one of the limited exclusions in the no-fault act applies, and the losses suffered by uninsured persons injured in motor vehicle accidents could be indirectly passed on to the owners and registrants of motor vehicles through insurance premiums." [*Williamson*, 513 Mich at 271 (quotation marks and citation omitted).]

MCL 500.3173a(4) governs fraudulent insurance acts and states:

A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the [MAIPF], or to an insurer to which the claim is assigned under the assigned claims plan, for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.4503] that is subject to the penalties

---

[6] Because there is a genuine issue of material fact whether plaintiff was permitted to drive the SUV and the trial court accordingly erred in granting Nationwide's motion for summary disposition as to an unlawful taking, the trial court abused its discretion by granting Nationwide's motion for reconsideration on the basis of this Court's holding in *Swoope*.

imposed under [MCL 500.4511]. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment of [PIP] benefits under the assigned claims plan.

Under MCL 500.3173a, an individual commits a fraudulent insurance act when:

(1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim. [*Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 779-780; 910 NW2d 666 (2017).]

MCL 500.3173a "unambiguously establishes that the only scienter requirement is mere knowledge that the statement contains false information concerning a fact or thing material to the claim[.]" *Bakeman v Citizens Ins Co of the Midwest*, 344 Mich App 66, 74; 998 NW2d 743 (2022) (quotation marks and citation omitted).[7] "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Fashho v Liberty Mut Ins Co*, 333 Mich App 612, 618; 963 NW2d 695 (2020) (quotation marks and citation omitted). "[F]raud may be established by circumstantial evidence." *Foodland Distribs v Al-Naimi*, 220 Mich App 453, 458; 559 NW2d 379 (1996) (emphasis omitted).

Defendant sought partial summary disposition based upon plaintiff leaving section 24 of his application for PIP benefits to the MAIPF for the second accident unanswered and blank being a "fraudulent insurance act" under MCL 500.3173a(4) as a matter of law. The trial court granted defendant's motion for partial summary disposition on this basis. However, we find pursuant to the plain language of the statute that plaintiff leaving section 24 blank and unanswered does not amount to presenting a "written statement" under MCL 500.3173a(4).

The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide 'the most reliable evidence of its intent . . . . [*Spectrum Health*, 492 Mich at 515 (brackets, internal quotations marks and citation omitted).]

---

[7] *Bakeman* analyzed the language of MCL 500.3173a(2), as amended by 2012 PA 204. This earlier version of MCL 500.3173a was amended by 2019 PA 21, effective June 11, 2019, the former MCL 500.3173a(2) was relocated to MCL 500.3173a(4), and its language was only changed in ways that have no bearing on the issue on appeal here. See *Bakeman*, 344 Mich App at 73 n 2.

-13-

*Merriam-Webster's Collegiate Dictionary* (11th ed) provides the following pertinent definitions of "statement": (1) "something stated: . . . a single declaration or remark: assertion . . . [or] a report of facts or opinions; and (2) "the act or process of stating or presenting orally or on paper."

Section 24 of the application for PIP benefits to the MAIPF after the second accident inquires whether, before the subject accident occurred, if he had any of the same or similar injuries as he listed as injuries from the subject accident (and, if so, to describe those injuries and list the doctors and pharmacies he treated with). Here, where plaintiff left section 24 unanswered and blank, nothing is being declared, remarked, asserted or reported and plaintiff has undertaken no act or process of stating or presenting anything on paper and instead has that section of the application in the condition in which it came to him, i.e., he has made no "written statement." The application said "this application must be completed" and "additional information may be required." To the extent defendant believed that plaintiff had not completed the application, or that it required further information, it should have communicated those issues to plaintiff.

Defendant's brief on appeal discusses four unpublished decisions of this Court that found that an omission or failure to disclose information on an application for PIP benefits can constitute a "fraudulent insurance act" under MCL 500.3173a(4). While such unpublished decisions are not binding upon this Court under the rule of stare decisis, they may be considered for their instructive or persuasive value. *Youmans v Charter Twp of Bloomfield*, 336 Mich App 161, 217; 969 NW2d 570 (2021), citing MCR 7.215(C)(1). However, here we find those decisions are uniformly factually distinguished from the present case such that they have no value to our determination of this issue. None of the unpublished decisions address the situation we have here, where the individual making an application for PIP benefits left the section of the application at issue entirely unanswered and blank such that there is no "written statement." Rather, in each of those decisions, some information was disclosed, i.e., a written statement was provided, but it was found to be knowingly and materially false based on that written statement being incomplete and material information being omitted from it.[8] In that circumstance, unlike the present one, a court could find that a claimant made such a partial and incomplete written statement "knowing that the statement contains false information concerning a fact or thing material to the claim." MCL 500.3173a(4).

---

[8] For example, in *Rodriguez v Farmers Ins Exch*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2023 (Docket No. 359067), a paralegal at the plaintiff's attorney's firm prepared his application, which indicated that he "injured his neck, head, ankle, and nose in the accident," "had prior injuries in 2004 and in 2015 to his spine and his head for which he had surgery, and that in listing the medications he was taking "at any time before this accident" he disclosed he was taking aspirin and "diabetic pill[s]." *Id*. at 1-2, 4. However, this Court found "plaintiff's medical records establish that plaintiff omitted many significant facts from his application for no-fault benefits," including a 2007 motor vehicle accident, a 2011 slip and fall, and a 2011 motorcycle accident all resulting in neck pain, a 2016 motion vehicle accident resulting in two herniated discs in his neck, a 2017 motor vehicle accident resulting in a closed head injury, and a medication history that included significant pain medication (Flexeril, Percocet, and Norco).

Further still, even if leaving section 24 unanswered and blank could under certain circumstances be considered a "written statement," we further find that there is a genuine issue of material fact whether plaintiff made such a written statement "knowing that the statement contains false information concerning a fact or thing material to the claim." MCL 500.3173a(4). Viewing the direct and circumstantial evidence in the light most favorable to the non-movant, and likewise making all reasonable inferences from such evidence in the non-movant's favor, as this Court must, we find that a reasonable juror could readily infer and determine that plaintiff leaving section 24 blank was a mere oversight and that plaintiff simply overlooked that section. The fact that he responded to those inquiries in his application for PIP benefits to the MAIPF after the first accident,[9] and he had already disclosed the first accident and the injuries he sustained therefrom in his first application to the MAIPF, supports such an inference. His having likewise left sections 23 and 25 of the second application unanswered and blank likewise supports such an inference and suggests that plaintiff was negligent rather than knowingly false in failing to provides responses to some sections in completing the application.[10] For example, it would have benefitted plaintiff to complete section 23 of the application, which inquires whether he is currently being treated or if he was treated by a doctor after the accident or initial ER treatment (and, if so, to identify and provide contact information for such doctors), because the point of the application is to obtain PIP benefits to pay such doctors' bills. A juror could readily, reasonably infer that plaintiff's failure to answer section 24 was not knowingly false, and was instead a matter of mere oversight and that plaintiff simply overlooked that section, because there would be no discernable purpose for plaintiff to knowingly fail to complete that section where he had already previously provided the MAIPF with that information (and further where plaintiff likewise readily provided information regarding his prior injuries responsive to section 24 of his second application at his deposition).

III. CONCLUSION

The trial court erred in granting Nationwide's motion for partial summary disposition regarding an unlawful taking when there exists a question of fact whether plaintiff had permission from the SUV's owner to drive the vehicle on the date of the first accident. The trial court abused its discretion by granting Nationwide's motion for reconsideration with regard to this unlawful taking issue. We likewise find that the trial court erred by granting partial summary disposition in favor of Nationwide based upon plaintiff committing a fraudulent insurance act under MCL 500.3173a(4) for the second accident. We find that plaintiff leaving section 24 of his application for PIP benefits to the MAIPF for the second accident blank and unanswered does not constitute a "written statement" under the terms of the statute, and, even if it did, there is nonetheless an issue

---

[9] Interestingly, the application for PIP benefits to the MAIPF after the first accident was made on a different form and the inquiries made at section 24 of the second application regarding whether, "[b]efore this accident happened, [he had] any of the same injuries" are found at section 26 of the first application.

[10] Again, consistent with the express terms of the application, to the extent that defendant believed plaintiff had not completed the application or that it required additional information, it should have responded to the application by informing plaintiff that he was required to provide the information requested in the sections left blank.

of material fact whether plaintiff's failure to answer section 24 was a matter of mere oversight and not knowingly false.

We accordingly reverse and remand for further proceedings. We do not retain jurisdiction.

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace