*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREEN SKIES-HEALING TREE, LLC, GREEN
SKIES-FAR WEST, LLC, BATTLE SPRING, LLC,
ANN ARBOR HEALING, LLC, WARREN
CAPITAL HOLDINGS, LLC, MINY HOLDINGS,
LLC, and MERIDA CAPITAL PARTNERS IV,
LLC,

        Plaintiffs-Appellants,

v

GREEN PEAK INDUSTRIES, INC., and THE
DISTRICT PARK, LLC,

        Defendants,

and

JEFF RADWAY, JEFF DONAHUE, AL GEVER,
MATT GAVIGAN, JEFF JACOBS, TROPICS, LP,
SNDL, INC., SUNSTREAM BANCORP, INC., and
SAF GROUP,

        Defendants-Appellees.

UNPUBLISHED
January 21, 2026
11:08 AM

No. 370561
Oakland Circuit Court
LC No. 2023-199132-CB

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Plaintiffs, Green Skies-Healing Tree, LLC; Green Skies-Far West, LLC; Battle Spring, LLC; Ann Arbor Healing, LLC; Warren Capital Holdings, LLC; MINY Holdings, LLC; and Merida Capital Partners IV, LLC, collectively, a recreational cannabis business operating under the trade name 3Fifteen, appeal by right the trial court opinion and order dismissing plaintiffs' claims in their second amended complaint against defendants, Jeff Radway, Jeff Donahue, Al

-1-

Gever, Matt Gavigan, and Jeff Jacobs (the "individual defendants"), and defendants Tropics, LP; SNDL, Inc.; Sunstream Bancorp, Inc.; and SAF Group (the "additional defendants").[1] We affirm.

## I. BACKGROUND FACTS

Each plaintiff is a Michigan limited-liability company with its principal place of business located in Birmingham, Michigan. Green Skies-Healing Tree, Green Skies-Far West, Battle Spring, Ann Arbor Healing, and Warren Capital are all owners of licensed marijuana-provisioning centers located across the state, and collectively operate under the trade name 3Fifteen. Merida Capital Partners is a Delaware limited partnership that owns the majority of MINY Holdings, and is the majority owner of 3Fifteen. Mitchell Baruchowitz is the cofounder and managing partner of Merida.

Radway is the founder and chief executive officer of GPI and chairman of its board of directors. He owns more than 50% of GPI's stock and controls GPI's management. GPI operates under the name Skymint Brands ("Skymint"), a Michigan corporation, which claims to be one of the largest vertically integrated and regulated cannabis operators in Michigan. Donahue is general counsel and corporate secretary of GPI, and was previously on the board of directors. Gever is the president of GPI and a member of the board. Jacobs is also a member of the board, and Gavigan is the chief strategy officer and senior financial officer of GPI. GPI and its subsidiaries, GPIMD Corporation and The District Park, are Michigan corporations. Plaintiffs alleged that the individual defendants were residents of Ingham, Eaton, or Washtenaw County, but conducted business in Oakland County.

In August 2021, 3Fifteen and its parent company, MINY Holdings, as sellers, entered an asset purchase agreement (APA) with GPI and its subsidiary, GPIMD, but the parties never closed on the agreement. In September 2021, Merida invested $8 million in GPI in exchange for 2,758,621 shares of common stock in GPI. Plaintiffs alleged that Donahue made several promises to induce Merida to make the investment, and, according to plaintiffs, none of these funds were actually used for the promised purposes, such as funding new marijuana-provisioning stores; rather, the funds were used to cover GPI operating losses.

On September 17, 2021, GPI entered into a securities purchase agreement with Tropics, under which Tropics advanced a loan of $70 million to Skymint in connection with Skymint's acquisition of 3Fifteen's assets. Tropics is an entity created by Sunstream Bancorp for the sole purpose of making this loan. Tropics, Sunstream, and SNDL are Canadian entities, and SAF is the trade name used by Sunstream and other entities.

Following months of negotiations, in April 2022, 3Fifteen and MINY Holdings, as sellers, entered an amended APA with GPI and The District Park, as purchasers. Under the amended APA, 3Fifteen would transfer substantially all of its business assets to GPI in exchange for common stock of GPI equal to a 30% interest in GPI. GPI promised plaintiffs a preference over

---

[1] Plaintiffs voluntarily dismissed their claims against defendants Green Peak Industries, Inc. (GPI) and The District Park, LLC, in the trial court; as such, these parties are not directly involved in this appeal.

proceeds, and if GPI were sold, plaintiffs' aggregate ownership percentage would have a minimum value of $129,750,000. Plaintiffs also would get the first $130 million of all distributions after paying the debt. Under the amended APA, plaintiffs understood that it would take time to transfer—or have reissued in GPI's name—some of the cannabis licenses under which plaintiffs operated. These "delayed assets" would not be transferred until GPI paid all federal, state, and local taxes that were due.

Plaintiffs alleged that, at the time Radway and the board of GPI made these promises to plaintiffs, they knew GPI's stock was not worth what was promised. Plaintiffs alleged that they relied on misleading financial statements provided by GPI to enter the amended APA. Plaintiffs also believed that Radway mismanaged GPI and made unilateral decisions without board approval, motivated by personal interests. Plaintiffs believed GPI had already defaulted under its loan from Tropics by April 2022, but did not disclose this to plaintiffs when entering the amended APA. Plaintiffs also alleged that Sunstream was pressuring Skymint to effectuate the transfers of 3Fifteen's marijuana dispensary licenses despite knowing that Skymint had not fulfilled its obligations under the APA and had hidden information related to the Tropics loan. Plaintiffs believed that—as the sole source of capital for Skymint's liabilities through the Tropics loan—SAF, Sunstream, and SNDL essentially had full control over Skymint.

On May 11, 2022, GPI issued 55,827,836 shares of its common stock to plaintiffs and agreed to issue any top-up shares necessary to bring plaintiffs' stock ownership to 30% equity interest in GPI. Also on May 11, 2022, plaintiffs and GPI entered management service agreements allowing The District Park to run plaintiffs' retail facilities, even though the facilities had not yet been transferred to GPI and were still licensed in plaintiffs' names. By February 2023, plaintiffs had terminated each management service agreement on the basis of alleged breaches by The District Park. Plaintiffs believed that as of February 2023, GPI and The District Park had borrowed nearly $100 million from Tropics under the securities purchase agreement.

## II. PROCEDURAL HISTORY

On March 3, 2023, Tropics sued GPI, The District Park, and GPIMD in Ingham Circuit Court, Lower Court No. 23-149-CB, for being in default on the loan. Tropics alleged that they owed more than $127 million and asked for the appointment of a receiver. The same day, the Ingham Circuit Court issued a stipulated order appointing a receiver "based on the stipulation between the parties that [Skymint's] business [was] in jeopardy of waste and further diminution of value absent immediate appointment of the receiver."

Three days later, plaintiffs filed suit in this matter against GPI, The District Park, and the individual defendants in Oakland Circuit Court. Plaintiffs asserted that the receivership order did not affect their claims against the individual defendants, which included fraud in the inducement of the amended APA and Merida subscription agreement, breach of fiduciary duties, and shareholder minority oppression. The individual defendants moved to strike or dismiss the complaint, or to reassign the case or transfer venue, because the Michigan Receivership Act, MCL 554.1101 *et seq*., provided Ingham Circuit Court with exclusive jurisdiction over plaintiffs' claims because they related to the receivership action and property. The trial court struck the individual defendants' motion because it effectively contained several different motions, and was procedurally improper. Thus, the individual defendants moved to strike the complaint or reassign

the case or transfer venue based on plaintiffs' failure to properly disclose that this action arose from the same transaction or occurrence as the receivership action. In response, plaintiffs moved to amend their complaint to make clear that they were not asserting claims against any parties to the receivership action or seeking recovery of assets defined as receivership property. Plaintiffs also voluntarily dismissed their claims against GPI and The District Park. The trial court granted plaintiffs leave to file a first amended complaint, and denied the individual defendants' motion to strike the complaint or transfer venue. The trial court concluded that this case was separate and distinct from the receivership action.

Plaintiffs filed a first amended complaint against the individual defendants only, again alleging fraud in the inducement of the APA and the Merida subscription agreement, breach of fiduciary duties, and minority oppression. The individual defendants again moved to dismiss the first amended complaint on the basis that Ingham Circuit Court had exclusive jurisdiction over plaintiffs' claims because they related to the receivership. Plaintiffs sought leave to file a second amended complaint, which the trial court granted.

Plaintiffs filed a second amended complaint against the individual defendants and named the additional defendants as parties for the first time. The second amended complaint added new factual allegations against the additional defendants and their involvement with GPI and the individual defendants. In essence, plaintiffs alleged that the additional defendants knew Skymint was in financial distress and therefore pressured Skymint to enter the amended APA to obtain plaintiffs' assets and licenses, so that Skymint would have more collateral to pay off the Tropics loan. Plaintiffs alleged the following counts: (1) fraud in the inducement of the amended APA against Radway; (2) fraud in the inducement of the Merida subscription agreement against Donahue; (3) breach of fiduciary duties by the individual defendants; (4) minority oppression against the individual defendants; (5) aiding and abetting breach of fiduciary duty by the additional defendants; (6) statutory conversion against the individual defendants; (7) common-law conversion against the individual defendants; (8) tortious interference with contractual relations against all defendants; and (9) tortious interference with business relations against all defendants.

The trial court deemed the individual defendants' previous motion to dismiss as moot, having been superseded by the second amended complaint. The receiver appointed in Ingham Circuit Court moved to intervene in this action, arguing that plaintiffs' claims "undoubtedly" related to the receivership property, which the trial court denied.

The individual defendants ultimately moved to dismiss the second amended complaint under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) on the basis that the Ingham Circuit Court had exclusive jurisdiction over this matter because it related to the receivership. Tropics also moved to dismiss the second amended complaint, asserting that the trial court lacked personal jurisdiction over Tropics, Ingham Circuit Court had exclusive jurisdiction over plaintiffs' claims, and plaintiffs failed to state any cognizable claims against Tropics. The remaining additional defendants—SNDL, Sunstream, and SAF, moved to dismiss the second amended complaint, also arguing that the trial court lacked personal jurisdiction over them, and moreover, SAF was a brand name akin to a service mark, rather than a legal entity capable of being sued. They also argued that Ingham Circuit Court had exclusive jurisdiction.

Plaintiffs opposed the motions, arguing that their claims were not related to the receivership or the receivership property. Plaintiffs also argued that Oakland Circuit Court had personal jurisdiction over the additional defendants under the Michigan long-arm statutes, and that the exercise of jurisdiction comported with due process. Plaintiffs asserted that the court had jurisdiction over the additional defendants under a conspiracy theory of jurisdiction, that SAF was a legal entity capable of being sued, and that Tropics purposefully availed itself of jurisdiction in Michigan by filing the complaint in the receivership action.

The trial court dismissed plaintiffs' claims against SAF on the basis that SAF was a marketing name rather than an official entity capable of being sued. The trial court also granted SNDL, Sunstream, and Tropics summary disposition because plaintiffs failed to meet their burden to establish that the court had limited personal jurisdiction over these parties such that exercising that jurisdiction would not offend due process. The trial court rejected plaintiffs' conspiracy theory of jurisdiction. Lastly, the trial court granted the individual defendants summary disposition because Ingham Circuit Court had exclusive jurisdiction over plaintiffs' claims, which related to the receivership and receivership property. This appeal followed.

III. EXCLUSIVE JURISDICTION OF THE RECEIVERSHIP COURT[2]

Plaintiffs argue that the trial court erred by granting summary disposition to the individual defendants under MCR 2.116(C)(4) on the basis that the Ingham Circuit Court had exclusive jurisdiction. We disagree.

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *True Care Physical Therapy, PLLC v Auto Club Group Ins Co*, 347 Mich App 168, 175; 14 NW3d 456 (2023) (quotation marks and citation omitted). Summary disposition under MCR 2.116(C)(4) is proper when the court lacks subject-matter jurisdiction. *Id*. at 176. "For jurisdictional questions under MCR 2.116(C)(4), this Court determines whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate a lack of subject." *Id*.

"In general, subject-matter jurisdiction has been defined as a court's power to hear and determine a cause or matter." *Daystar Seller Financing, LLC v Hundley*, 326 Mich App 31, 35; 931 NW2d 15 (2018) (quotation marks and citation omitted). With regard to a circuit court's general subject-matter jurisdiction, MCL 600.605 provides:

> Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution

---

[2] When the trial court discussed this issue in its opinion and order, the heading refers to MCR 2.116(C)(1) (the court lacks jurisdiction over the person or property). However, after reviewing the entire opinion, we conclude that reference in the heading is a scrivener's error, and the trial court actually analyzed this issue under MCR 2.116(C)(4) (the court lacks jurisdiction of the subject matter).

or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.

To the extent that the circuit court's jurisdiction is limited by statute, we employ the following well-established principles of statutory interpretation:

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent. [*Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012) (quotation marks, alterations, and citation omitted).]

"If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *True Care Physical Therapy, PLLC*, 347 Mich App at 176 (quotation marks and citation omitted).

The Michigan Receivership Act allows for the appointment of a receiver, defined as "a person appointed by the court as the court's agent, and subject to the court's direction, to take possession of, manage, and, if authorized by this act or court order, transfer, sell, lease, license, exchange, collect, or otherwise dispose of receivership property." MCL 554.1012(o). "Receivership property" is defined as "the property of an owner that is described in the order appointing a receiver or a subsequent order. The term includes any proceeds, products, offspring, rents, or profits of or from the property." MCL 554.1012(q).

At issue in this case is MCL 554.1015, which provides:

> (1) Except as provided in this act, the procedure for the selection, appointment, removal, and compensation of a receiver, or a professional engaged under [MCL 554.1025], under this act is as established by the court rules.

> (2) The court that appoints a receiver under this act has exclusive jurisdiction to direct the receiver and determine any controversy related to the receivership or receivership property.

The term "related to" is not defined in the statute, so we may look to dictionary definitions. *Spectrum Health Hosps*, 492 Mich at 515. "Related" as in "associated" is defined as "having a close connection like that between family members." *Merriam-Webster's Collegiate Dictionary* (12th ed). "Related" as in "pertained" is defined as "to have a relation or connection." *Merriam-Webster's Collegiate Dictionary* (12th ed).

The stipulated order appointing the receiver in the Ingham County action provided that Gene Kohut was appointed as receiver of "all of the assets and property, tangible or intangible,

real, personal or mixed (including funds or sale proceeds that may become subject to [Tropic's] security interest after the entry of this Order . . .)" of GPI, The District Park, and GPIMD. The order then defined the receivership property as follows:

> a. All personal property, general intangibles, machinery, apparatus, products, crops, inventory, equipment, fixtures, materials, supplies and all other articles of personal property of Defendants ("Business Property");

> b. All books, records, documents, instruments, leases, employment agreements, management agreements, service agreements, contracts, licenses, cannabis license(s), . . . ("Business Records");

> c. All checking, savings, depository, payroll, vendor, petty cash, operating, lock box, credit card merchant, . . . , or other accounts, or funds relating to the Property ("Business Accounts");

> * * *

> f. All insurance claims, rights to submit insurance claims, refunds, rebates or any unused premiums;

> * * *

> h. All current and future licenses, leases and other agreements or arrangements affecting the use or occupancy of all or any portion of any property of Defendants, except to the extent not permitted by law.

On its face, the allegations in plaintiffs' second amended complaint "relate to" the receivership property, which, according to the order appointing the receiver, includes all contracts and service management agreements. Plaintiffs' claims concern the amended APA, management service agreements, and the subscription agreement. Moreover, plaintiffs conceded in the receivership action that its claims relate to receivership property. 3Fifteen (i.e., plaintiffs in this matter) moved for reconsideration of an order entered in the receivership action, and requested that the trial court find "that cross-default provisions in various leases are enforceable." Plaintiffs argued, "given 3Fifteen's claims in another forum regarding fraud in the inducement, entry of the Order effectively rewards Skymint for its complained of behavior." In requesting that the order be set aside, 3Fifteen argued, "Effectively the Receiver will be selling and transferring property that is the proceeds of fraud, thereby leaving 3Fifteen with an empty remedy," as in reference to this case. 3Fifteen asked the receivership court to pause any sale until the claims in this case were adjudicated on the merits, arguing that "[t]he entry of the Order approving the sale of Skymint's purported assets, which approvals and decisions of shareholders are subject to the claims of 3Fifteen in another proceeding, has resulted in a substantial injustice."

Accordingly, based on the plain language of the statute, the plain language of the second amended complaint, and plaintiffs' concessions in the receivership action, we conclude that the trial court properly granted the individual defendants summary disposition of plaintiffs' claims because, as the court presiding over the related receivership action, Ingham County Circuit Court,

had exclusive jurisdiction over plaintiffs' claims under MCL 554.1015(2). Likewise, although the trial court granted summary disposition only to the *individual* defendants on the basis of this reasoning, the trial court also noted in its order of dismissal that amendment of the complaint of plaintiffs' counts against the *additional* defendants would be futile because of the exclusive jurisdiction of the receivership court. As such, the trial court's reasoning would extend to the additional defendants, and we choose to affirm summary disposition of plaintiffs' claims against the additional defendants based on the same reasoning. See *Bronson Health Care Group, Inc v State Auto Prop & Cas Ins Co*, 330 Mich App 338, 342 n 3; 948 NW2d 115 (2019) ("We may affirm the trial court when it reached the right result, even if we differ on the reasoning underlying that result.").

Therefore, summary disposition in favor of all of the defendants is affirmed under MCR 2.116(C)(4). This renders moot the remainder of plaintiffs' claims on appeal related to the circuit court's jurisdiction and the legal status of SAF. See *Duckett v Solky*, 341 Mich App 706, 731-732; 991 NW2d 852 (2022) ("An issue is rendered moot when an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical effect on the existing controversy.") (quotation marks and citation omitted).

Affirmed.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado